Carolyn MODICA, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–03–351–CR.

Court of Appeals of Texas, Beaumont.

Submitted on Sept. 28, 2004.

Decided Dec. 1, 2004.

718

Jack Lawrence, Beaumont, for appellant.

Michael D. Papania, Nederland, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE MCKEITHEN, Chief Justice.

Appellant, Carolyn Modica, was convicted by a jury for having committed a Class C misdemeanor offense of Assault. See Tex. Pen.Code Ann. § 22.01(a)(3), (c) (Vernon Supp.2004). The trial court assessed a fine of $200 and costs. Eight issues are raised for our consideration. We will recount facts elicited at trial only when necessitated by the issue under consideration.

Issue one reads: "The trial court erred by holding in its judgment only that defendant is convicted of 'City Appeal–Other,' which does not constitute an offense under Texas law, and therefore, said judgment is void, and appellant is correspondingly entitled to appropriate relief." In *Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim.App.2001), the Court of Criminal Appeals noted that a judgment is void only in very rare situations, "usually due to a lack of jurisdiction." The Court went on to enumerate the circumstances as follows:

A judgment of conviction for a crime is void when (1) the document purporting to be a charging instrument (i.e. indictment, information, or complaint) does not satisfy the constitutional requisites of a charging instrument, thus the trial court has no jurisdiction over the defendant, (2) the trial court lacks subject matter jurisdiction over the offense charged, such as when a misdemeanor involving official misconduct is tried in a county court at law, (3) the record reflects that there is no evidence to support the conviction, or (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel, when such has not been waived, in violation of *Gideon v. Wainwright* [, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)]. While we hesitate to call this an exclusive list, it is very nearly so.

Id. (footnotes omitted). In the instant case, none of the four enumerated situations appear in the record. The assault charge against appellant stemmed from the filing of a complaint with the municipal court of the City of Beaumont by the victim, [M.E.P.]. Therefore, the complaint is the document purporting to be the charging instrument. See *Zulauf v. State*, 591 S.W.2d 869, 871 n. 3 (Tex.Crim.App. 1979). The complaint lists the offense as "Assault (Simple)," and alleges that on or about December 21, 2000, appellant did "intentionally, or knowingly cause physical contact with [M.E.P.] when he/she knew or should reasonably have believed that said [M.E.P.] would regard the contact as offensive or provocative." Furthermore, the trial court's written instructions to the jury listed appellant's charge as "assault," and set out the following language in the application paragraph:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, CAROLYN MODICA,

did in Beaumont, Jefferson County, Texas, on or about the 21st day of December, 2000, intentionally or knowingly cause physical contact with [M.E.P.] when she knew or should reasonably have believed that said [M.E.P.] would regard the contact as offensive or provocative, you will find the defendant guilty.

Unless you so find beyond a reasonable doubt or if you have a reasonable doubt thereof, you will find the defendant not guilty.

■ At any rate, we agree with the State that the "City Appeal–Other" language shown on the face of the judgment is merely an irregularity that can be corrected by a judgment nunc pro tunc or by this Court on appeal. First, it must be remembered that the written judgment is merely a record of events which have occurred in fact; the written judgment is not itself the conviction but evidence, among other things, that a conviction has occurred. See *Jones v. State*, 795 S.W.2d 199, 202 (Tex.Crim.App.1990). And while it is true that an appeal may not be taken until a written judgment has been entered, it is not the signing of the judgment that constitutes the "appealable event"; it is the pronouncement of sentence in open court that is the appealable event. See *Thompson v. State*, 108 S.W.3d 287, 290 (Tex.Crim.App.2003); *Coffey v. State*, 979 S.W.2d 326, 328 (Tex.Crim.App.1998); *Rodarte v. State*, 860 S.W.2d 108, 109–10 (Tex.Crim.App.1993). As the judgment in the instant case is not void, we overrule issue one.

■ Issue two states, "The trial court erred as a matter of law by proceeding to trial without the appointed attorney pro tem, Mr. Holmes, having first taken the mandatory oath required by Texas Code of Criminal Procedure Article 2.07(c)." The record reflects that the trial court appointed a "Criminal District Attorney Pro Tem" to prosecute appellant and the "Oath Of Office" portion of said order does not appear to have been executed. While appellant implicitly concedes in her brief that no objection was raised to the failure of the appointed prosecutor to take the oath of office, she essentially contends that being prosecuted by a sworn prosecutor is a "systemic" and "absolute" right possessed by her and, therefore, unwaivable. In *Marbut v. State*, 76 S.W.3d 742, 750 (Tex. App.-Waco 2002, pet. ref'd), the Court found the provisions contained in Tex.Code Crim. Proc. Ann. art. 2.07 (Vernon Supp. 2004), "[do] not concern the jurisdiction of the trial court or the constitutionality of a statute." *Marbut*, 76 S.W.3d at 750. The Court also found that a defendant's right to have a prosecutor qualified under article 2.07 to represent the State is not a right so fundamental to the proper functioning of our adjudicatory process that it cannot be forfeited. Id. (quoting from *Marin v. State*, 851 S.W.2d 275, 278 (Tex.Crim.App. 1993)).

Although appellant vigorously argues her fundamental constitutional and statutory rights were violated when the appointed prosecutor apparently neglected to take the oath of office, she fails to demonstrate the alleged error was preserved for appellate review by citing to *Marin v. State* or any of its progeny. See *Marin*, 851 S.W.2d 275 (Tex.Crim.App.1993). It is imprudent, to say the least, for an appellant to raise a "fundamental" or "systemic" rights violation, in the face of a failure to object at trial, without attempting to place said rights in the Marin "continuum." As the Court of Criminal appeals recently reiterated:

Marin has been a watershed decision in the law of error-preservation. After Marin we have held that a right that formerly was thought to be "waivable

only" actually requires an objection at trial. We have held that some requirements that were formerly held to be absolute requirements are not. We have held that a party may be estopped from relying on an absolute requirement. On the other hand, we have recognized three more absolute requirements since Marin: a constitutional requirement that a district court must conduct its proceedings at the county seat, the constitutional prohibition of ex post facto laws, and certain constitutional restraints on the comments of a judge. See Sanchez v. State, 120 S.W.3d 359, 365–66 (Tex.Crim.App.2003) (quoting from Saldano v. State, 70 S.W.3d 873, 888–89 (Tex. Crim.App.2002) (citations omitted)).

█ The system of adjudication at work in Texas contains rules of three distinct types: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. Marin, 851 S.W.2d at 279. The particular provision in question is found in Tex.Code Crim. Proc. Ann. art. 2.07(c) (Vernon Supp.2004), which provides: "If the appointed attorney [pro tem] is not an attorney for the state, he is qualified to perform the duties of the office for the period of absence or disqualification of the attorney for the state on filing an oath with the clerk of the court." On its face, article 2.07(c) does not appear to be the type of evidentiary or procedural rule that belongs to an accused and which must be protected by the system unless expressly waived, unlike the language of the rule at issue in Marin.[1] Marin, 851 S.W.2d at 277, 279. Nor can we say that article 2.07(c) is such

a requirement that "[i]mplementation of th[is] requirement[ ] is not optional and cannot, therefore, be waived or forfeited by the parties." Id. at 279. We have found no cases which have raised the provisions of article 2.07(c) to a "systemic requirement." We find that the provisions of article 2.07(c) fall into that class of Marin's rules and procedures that are forfeited if not insisted upon by objection, request, motion, or some other behavior calculated to call its lack of implementation to the attention of the "system's impartial representative, usually the trial judge." Marin, 851 S.W.2d at 279. As appellant failed to complain either at trial or in her motion for new trial, we find the issue is not preserved for appellate review. Tex. R.App.P. 33.1(a). Issue two is overruled.

█ Issue three is presented to us as follows:

The costs of court assessed cannot be enlarged upon on an appeal from a municipal court conviction of a "fine only" citation offense where the additional assessments for items such as fugitive apprehension and correctional management do not correspond to the purposes behind creating said offense, and similar assessments are not made by the municipal court, thus causing the county court entertaining the appeal to assess an excessive penalty, in violation of the Eighth Amendment of the United States Constitution, and Article I, § 13, of the Texas Constitution, and necessitating that these parts of the order be vacated.

Once again, the record reflects no objection was made to the trial court of the various assessments contained in the court costs. Appellant appears to be under the mistaken belief that the proceeding in the

1. The provision at issue in Marin states: "An appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in writing or on the record in open court." See Tex.Code Crim. Proc. Ann. art. 1.051(e) (Vernon Supp.2004) (emphasis added); see Marin, 851 S.W.2d at 281–82.

County Court at Law was an "appeal" from the proceeding in the municipal court. The Code of Criminal Procedure provides that in appeals from a justice or municipal court, the trial must be de novo, unless the appeal is taken from a municipal court of record and the appeal is based on error reflected in the record. See Tex. Code Crim. Proc. Ann. art. 45.042(b) (Vernon Supp.2004). It also provides that in all appeals to a county court from justice or municipal courts, other than municipal courts of record, the trial must be de novo in the trial in the county court, the same as if the prosecution had originally been commenced in that court. See Tex.Code Crim. Proc. Ann. art. 44.17 (Vernon Supp.2004). In Title 2, Chapter 102 of the Texas Code of Criminal Procedure, there are various costs and fees assessed to defendants upon conviction for criminal offenses ranging from "fine-only" crimes to felonies. See Tex.Code Crim. Proc. Ann. arts. 102.005 & 102.075 (Vernon Supp.2004).[2] Chapter 103 of Title 2 also contains a provision to be utilized when a defendant believes erroneous costs have been assessed. See Tex. Code Crim. Proc. Ann. art. 103.008 (Vernon Supp.2004).

■ Appellant, in effect, attempts to again couch this issue in terms of an unwaivable violation of constitutional rights. We reiterate that except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, which are not involved here, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Tex.R.App. P. 33.1(a); see also *Mendez v. State,* 138 S.W.3d 334, 342 (Tex.Crim.App.2004). The proper assessment of court costs are neither a systemic requirement nor a waivable-only right. By failing to call the trial court's attention to any alleged improper court costs, appellant has forfeited review of the issue on appeal. Issue three is overruled.

Appellant presents and argues issues four, five, and six together. Issues four and five provide the following:

Issue Four: The trial court erred by allowing the prosecutor to improperly comment to the jury in closing argument, thereby denying appellant her right to a fair trial under the Sixth Amendment of the United States Constitution.

Issue Five: The trial court erred by allowing the prosecutor to improperly comment to the jury by misstating applicable law, the cumulative effect of which prevented appellant from receiving a fair trial under the Sixth Amendment of the United States Constitution.

We initially note that appellant's argument under these issues, along with the authorities cited, is woefully inadequate. An appellant seeking reversal of her conviction on the basis of a Sixth Amendment violation must allege the basis for a Sixth Amendment claim, such as that the error deprived her of her right to confront witnesses, or deprived her of the assistance of counsel for her defense. See generally *Bishop v. State,* 85 S.W.3d 819, 822 (Tex. Crim.App.2002). See also *Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562, 572 (1975).[3] Instead, citing

---

**2.** Article 102.075 was repealed effective January 1, 2004. See Act of June 2, 2003, 78th Leg. R.S., ch. 209, § 85(a)(7), (b) 2003 Tex. Gen. Laws 979, 1003. For relevant provisions which took effect on January 1, 2004, see Chapter 133 of the Texas Local Government Code, and particularly Tex. Loc. Gov't

Code Ann. §§ 133.101–133.104 (Vernon Supp.2004).

**3.** *Faretta* states that, because Sixth Amendment rights are basic to our adversary system of criminal justice, they are part of the "due process of law" that is guaranteed by the Fourteenth Amendment to defendants in the

to *Cortez v. State*, 683 S.W.2d 419, 420 (Tex.Crim.App.1984), appellant argues, "a fair trial cannot be had if it is not free from improper jury argument." An examination of Cortez indicates this "fair trial" observation was taken from *Richardson v. State*, 158 Tex.Crim. 536, 257 S.W.2d 308 (App.1953). *Cortez*, 683 S.W.2d at 420. A reading of Richardson does turn up the statement:

> The law provides for and presumes a fair trial free from such arguments as above quoted, and we do not think that this defendant has had a fair trial with such denunciations of the district attorney ringing in the ears of the jury who tried him.

*Richardson*, 257 S.W.2d at 309. However, there is absolutely no authority—statutory, constitutional, rule, or common law—cited in the entire Richardson opinion. Therefore, we feel appellant's "fair trial" argument, like the " 'mandatory statute' mantra," is "based on questionable lineage and is inconsistent with more recent precedent[.]" See *Hawkins v. State*, 135 S.W.3d 72, 78 (Tex.Crim.App.2004).

■ Additionally, appellant's argument and authorities blur the distinct line between the determination of error and harm. See *Hawkins*, 135 S.W.3d at 76 ("A harm analysis is employed only when there is error, and ordinarily, error occurs only when the trial court makes a mistake.") We must initially decide whether the jury arguments in question were improper.

Jury argument must be confined to four permissible areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App.1996); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973). If error is found in the trial court's ruling on an improper jury argument a three-prong test is used to determine if the error is reversible: (1) severity of the prosecutor's misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of the conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim.App.1998). For prosecutorial argument that strikes over the shoulders of defense counsel and for comments upon matters outside the record, the standard of harm for non-constitutional errors applies. Tex.R.App. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692 (Tex.Crim.App.2000).

■ Appellant's brief directs our attention to three instances during the State's closing remarks to the jury, the first appearing in the record as follows:

> [Prosecutor]: And that those are routine inspections and that something went wrong on this particular day be-

---

criminal courts of the States. *Id.*, 422 U.S. at 818, 95 S.Ct. 2525. Therefore, a defendant's "right of self-representation" finds support in the "structure of the Sixth Amendment." *Id.* at 819, 95 S.Ct. 2525. Because the Sixth Amendment does not contain explicit language providing for a defendant's "right" to proceed without counsel when he voluntarily and intelligently elects to do so, the Court was required to "find" such a right within the meaning of the Sixth Amendment as applied to the States through the Fourteenth Amend-

ment. *Id.* at 818–20, 95 S.Ct. 2525. The instant appellant argues that a prosecutor whose closing arguments contain evidentiary assertions that are outside the record violates her "right to a fair trial" under the same Sixth Amendment. Yet, unlike the Court in *Faretta*, appellant does not attempt to inform us specifically where such an argument, even if erroneous, falls within the right afforded by the Sixth Amendment so as to be "necessarily implied by the structure of the Amendment." *Faretta*, 422 U.S. at 819, 95 S.Ct. 2525.

cause as the inspection started before the noon break, half of the students, half of the students had left that school because they did not find it to be comfortable to be around the inspector under those circumstances.

[Trial Counsel]: Your Honor, I object to that. There's absolutely no testimony from anybody who left the school that they—

THE COURT: What is your objection, counselor?

[Trial Counsel]: My objection is that he's arguing outside of the record, Your Honor.

THE COURT: Overruled. Jurors, remember my instructions to you.

We find no error here as the State's comments were proper summation of the evidence. Testimony indicated that on the day in question approximately fifty students were present at Dolphin Technical Institute when appellant arrived to inspect. Further testimony indicated that before appellant arrived, the atmosphere at the school among students and instructors was basically normal, but after appellant's arrival that morning there was a "building tension" in the school. From this tension, testimony revealed that about "20 to 25" students left at lunch time and did not return. Therefore, the State's remarks were supported by the evidence.

▌▌▌ The second alleged instance of improper jury argument refers to the following:

[Prosecutor]: Ms. Modica tells you that she got there that day and that she was suspicious. She had had some reports from somebody, and she was there to see if she could catch them in violations.

She says she entered from the rear of the building and caught two people smoking in a fashion that violated the

regulations. When I challenged her on that provision, she did not—she did not deny that the commission had given special permission to that school for letting the smokers smoke in the back because the building permits for that building did not allow smokers in the front.

[Trial Counsel]: Your Honor, again, I object that he's arguing outside of the record.

THE COURT: Overruled.

The record reflects the following exchange during appellant's cross-examination testimony:

Q. [Prosecutor]: Did you know that your boss at that time, Mr. Knowles, had already approved—had previously approved smoking outside that building in the back because of the City regulations concerning smoking in the front? Did you know that?

A. [Appellant]: He didn't.

Q. He didn't?

A. No.

Q. You're saying that that's a false statement?

A. Yes, sir.

Clearly, appellant did indeed challenge the State's assertion that the cosmetology commission gave permission to the school's students to smoke at or near the back entrance of the school. However, the record reflects somewhat unique circumstances as is shown by the continuation of the State's argument immediately following the overruling of appellant's above-noted objection:

[Prosecutor]: But be all of that as it may, whether it's a violation or not, one of the things that did come out that whatever Mrs. Modica wrote in that report, by February her supervisor had been sent from Austin down here, reviewed everything, and gave them a 100 percent perfect score.

[Trial Counsel]: Your Honor, again, I object to his arguing outside of the record.

THE COURT: Sustained.

[Trial Counsel]: Ask the jury to be instructed to disregard that argument, Your Honor.

THE COURT: Sustained. Disregard what argument.

[Trial Counsel]: You sustained my objection that he's arguing outside the record. I'm merely asking for an instruction to [ask the] [sic] jury—

THE COURT: That they disregard what?

[Trial Counsel]: The statement that he made, Your Honor, that was outside of the record.

[Prosecutor]: Your Honor, I don't believe it's outside the record. That's something we could recess and get the court reporter—

THE COURT: No. We're not going to call a recess.

Members of the jury, you have—one of your responsibilities is to recall the facts. I trust that you will do that. Disregard any statement made by either attorney that is outside of the record.

[Trial Counsel]: Your Honor, move for a mistrial.

THE COURT: Denied.

In this instance, the record does support the State's argument. The following exchange took place during cross-examination of appellant:

Q. [Prosecutor]: Now, you inspected—and I'm going to cut to the chase. You inspected that day; and you cited numerous violations, did you not?

A. [Appellant]: Yes, I did.

Q. Okay. Isn't it true that that report—your report was set aside and superseded by a report of Mr. Knowles not even two months later and that that school got a 100 percent perfect score? That's true, isn't it?

A. Would you repeat that statement?

Q. Yes. Isn't it true that within, say, the month of February about two months or less from the time you inspected and cited that school on all those violations that the—Mr. Knowles inspected that school and it got a perfect score, did it not?

A. Yes.

It is necessary at this point to place the closing argument of the parties in its proper perspective. The charge of the court was read to the jury prior to the commencement of jury argument. The jury was also provided with the written instructions, which contained the following general instructions in pertinent part:

Questions and comments of the attorneys do not constitute testimony and must not be considered as evidence. You must also disregard any statement of the attorneys that is inconsistent with the law contained in this charge.

. . . .

You must not consider facts that have not been introduced into evidence or legal principles not contained in this charge. It is improper for any juror to discuss or consider anything which he or she knows or has learned outside of the testimony presented to you and the law contained in this charge. . . .

. . . .

You are the exclusive judges of the facts proven, the believability of the witnesses and the weight to be given their testimony. However, you must be bound by and strictly follow the law contained in this charge. . . .

. . . .

After the attorneys present their arguments, you will retire, select a fore-

person, and consider your verdict. The arguments are not evidence and you should give the arguments only the consideration you feel they deserve during the evaluation of the evidence. . . .

Moments later, during the closing argument of appellant's trial counsel, the trial court sustained the State's objection that trial counsel was arguing outside the record and gave the following verbal instruction to the jury:

THE COURT: Members of the jury, I may sustain or overrule an objection as to what was said but it is not my interpretation or understanding of what is said that is crucial. It is your understanding that—what the witnesses said that is crucial. So, [Trial Counsel] will be given some latitude to give his rationale and relate to you how he recalls the facts. [The Prosecutor] will likewise be given. an opportunity to tell you how they [sic] recall the facts. I may rule one way or the other. But disregard those statements, even the Court's ruling. You'll recall the facts as you understand them to be because what [Trial Counsel] says is not evidence.

What [The Prosecutor] says is not evidence, and what the judge says is not evidence. You decide what the evidence is.

That having been said, move forward, [Trial Counsel].

Trial counsel immediately followed the trial court's instructions with his own "admonishment":

[Trial Counsel]: Thank you, Your Honor.

Questions and comments of the attorneys do not constitute testimony and must not be considered as evidence. I'm not giving you evidence. I'm giving you what I think my opinion is drawn from the evidence. . . .

Thereafter, the prosecutor prefaced his final remarks to the jury with the following:

[Prosecutor]: Thank you. The first thing—I don't want to be repetitive but I do want to remind you you're the exclusive judges of the facts. So, regardless of what I say I think came from that stand and what I say I recall or [Trial Counsel], that's not the way it is. You heard the testimony. You heard the evidence. I ask you to be very careful in that regard. . . .

It was only after being verbally instructed by the trial court, with echoing remarks by counsel for the parties, that the improper remark by the State was made. Although the trial court overruled appellant's timely objection to the improper remark, the jury had already been instructed in great detail that nothing the attorneys said was evidence, to disregard the trial court's ruling on objections, and that only the members of the jury were to recall and decide what the evidence was. While appellant did deny that the cosmetology commission had given the school permission to allow students to smoke in the rear of the building, the State's improper comment to the contrary during final argument did not affect appellant's substantial rights so as to require reversal of her conviction. Tex. R.App. P. 44.2(b). Under the test for reversible error in jury argument as set out in *Mosley*, we find the cautionary instruction given by the trial court and affirmed by counsel for the parties combined to cure the error by the trial court in overruling appellant's objection. See *Mosley*, 983 S.W.2d at 259. Additionally, the prosecutor's "misconduct" was not severe and the strength of the evidence in support of the conviction was not given added weight in any significant degree. Id. We also find, under *Mosley*, that any error by the trial court during closing argument did not af-

fect appellant's substantial rights. Issues four and five are overruled.

Issue six avers: "The trial court erred by failing to provide sufficient curative instructions to the jury following the sustaining of defense objections to the prosecutor's improper comments." As noted above, two of the three instances of the State's closing argument in question found support in the evidence. Nevertheless, appellant argues that because any curative instructions given by the trial court were insufficient to cure the State's misconduct, the "cumulative effect" of the improper argument raised in appellate issues four and five require us to "review other misstatements of law and twisting of facts performed by [the prosecutor]." As only one of the three instances of alleged improper argument had merit, we find it unnecessary to conduct the sweeping review of the record for other "misstatements" by the State.

An isolated mischaracterization of the record by the State which was not severe and was made in the context of a plethora of prophylactic admonishments from the trial court and the parties does not require appellate analysis of the record for the effects of cumulative error. We recognize the proposition that a number of errors may be found harmful in their cumulative effect. See *Feldman v. State*, 71 S.W.3d 738, 757 (Tex.Crim.App.2002) (op. on rehearing); *Stahl v. State*, 749 S.W.2d 826, 832 (Tex.Crim.App.1988). However, there appears to be no precedent for holding that non-errors may, in their cumulative "effect," cause error, much less reversible error. See *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App.1999). We overrule issue six.

Issue seven registers this complaint: "Trial counsel's failures to request indicated jury instructions, to properly file a motion for new trial, to obtain rulings on filed discovery motions, to raise [the prosecutor's] disqualification, and failure to use certain highly exonerating exhibits supplied by appellant, cumulatively and singularly constituted a denial of the effective assistance of counsel, in violation of appellant's rights to effective counsel under the Sixth and Fourteenth Amendments to the United States Constitution."

In general, to obtain a reversal of a conviction on the ground of ineffective assistance, an appellant must demonstrate that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693, 698 (1984). In assessing a claim of ineffective assistance, an appellate court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, the [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689, 104 S.Ct. 2052 (some punctuation omitted; citation omitted).

Texas courts have consistently adhered to the standard set out in Strickland. See generally *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). "Any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* at 500. It is also recognized that counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. See id.; see also *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

The deficiencies of trial counsel alleged by appellant include (1) failing to request an instruction on self-defense, (2) failing to secure a jury instruction to the effect that the victim and her brother were not permitted to interfere or impede appellant's inspection of the school per cosmetology commission rules and regulations and provisions of the Texas Administrative Code, (3) failing to request disqualification of the prosecutor as he had been previously consulted by appellant regarding legal representation for the instant offense, (4) failing to properly "present" appellant's motion for new trial to the trial court for a ruling, (5) failing to obtain rulings on the pretrial motions he filed thereby failing to obtain "complete" discovery, and (6) failing to utilize certain "materials" acquired through prior State investigations of the victim's cosmetology school "which would have aided in [appellant's] defense."

■ With regard to most of these alleged deficiencies, appellant essentially asks us to assume no trial strategy existed or only an unreasonable one at best. Yet, what appellant asserts "ought to have been done" by trial counsel has virtually no legal foundation or factual support. For example, we are unaware of any statutory provision or common law precedent which would have permitted the trial court to have provided the jury with the provisions of Texas Cosmetology Commission's Regulation § 1602.551 so as to "have informed jurors that Appellant had both a right and a duty to protect such evidence [time cards] of violations." [4] Indeed, such an instruction could arguably have been subjected to an objection by the State as a comment by the trial court on the weight of the evidence. See Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.2004) (Judge shall deliver to the jury a written charge "distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.")

■ In a similar vein, appellant's insistence that trial counsel's performance was grossly deficient for failing to request an instruction on self-defense is entirely misplaced in light of the testimony of appellant. On direct examination, appellant testified as to how she sustained injuries to her hand and wrist. She continued her testimony concerning the events in question as follows:

Q. [Trial Counsel]: Did you knock [the victim] to the ground?

A. [Appellant]: No.

Q. Did you grab her by the shoulders and push her in a fashion that she would have hit her head on a wall?

A. No.

Q. Did you cause any injury to [the victim]?

A. No.

Q. Are you still feeling any of the effects of your injuries?

**4.** Similar language to that quoted in appellant's brief appears in Tex. Occ.Code Ann. § 1602.551 (Vernon 2004), and reads as follows:
(a) The commission, an inspector, or an authorized representative of the commission may enter a license holder's premises at any time during normal business hours to determine whether the license holder is in compliance with this chapter and commission rules.

(b) If an inspector discovers a violation of this chapter or a commission rule, the inspector shall:
(1) give to the violator written notice of the violation on a form prescribed by the commission; and
(2) file a complaint with the executive director.

A. Yes.

. . . .

Q. Okay. Did you in any way provoke [victim's brother] into doing what he did?

A. No.

Q. Did you in any form or fashion have any intention of touching [the victim]—

A. No. I'm sorry.

Q. Well, let me just finish.

—in a manner that she would have considered provocative or offensive?

A. No.

The record reflects that appellant denied even touching the victim or the victim's brother, but said she was herself assaulted by the victim and the victim's brother. Appellant contends that because trial counsel "argued" for the "fallback position of self-defense," his performance was deficient for failing to request such an instruction from the trial court.

■ We agree with the general proposition that when evidence from any source raises a defensive issue, and the defendant properly requests a jury instruction on that issue, the trial court must submit the issue. See *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App.1993). However, we have previously held that when the defensive issue in question is one contained in Chapter Nine of the Texas Penal Code, and the defendant fails to admit to having committed the charged act, the defendant is not entitled to an instruction on self-defense. See *Gilmore v. State*, 44 S.W.3d 92, 96–97 (Tex.App.-Beaumont 2001, pet. ref'd). As we explained, Chapter Nine is titled, "Justification Excluding Criminal Responsibility," and includes "justifications" such as "necessity" and "public duty," as well as self-defense. Id. at 97. As the title of the chapter indicates, these defenses have traditionally been recognized as justification for conduct that would otherwise be criminal. Id. As such an instruction informs the jury that the charged conduct was excusable under the law, the accused must admit to having committed the charged conduct in the first place. However, when a person accused of assault denies even touching the victim, as appellant so testified, she has engaged in no conduct which needs justifying. She has essentially denied that the alleged criminal act ever took place. Therefore, trial counsel's performance was not deficient for not having requested an instruction on self-defense as such a defense was not raised by the evidence. And, as noted above, argument of counsel is not evidence.

In *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002), the Court of Criminal Appeals observed that, under normal circumstances, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking [sic] as to overcome the presumption that counsel's conduct was reasonable and professional." (footnote omitted). This proposition was reiterated by the Court in *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex.Crim.App.2003). In her brief, appellant states: "Rylander is inapplicable because trial counsel's actions speak louder than his words in his own defense could, anyway, in the designated instances of ineffectiveness." Appellant appears to miss the entire point of Bone and Rylander in that her trial counsel's alleged deficiencies of performance are neither professionally deficient nor prejudicial per se. Under such circumstances, both Bone and Rylander agree that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836.

The somewhat unique procedural history of the instant case makes affording to trial counsel the opportunity to respond to appellant's particular complaints compelling in that appellant had already been adjudicated guilty by a jury in municipal court on the identical charge, albeit with different trial counsel. We have no way of knowing if present trial counsel discussed the strategy and presentation with municipal court trial counsel so as to refine or entirely change trial strategy for the de novo trial in county court. Obviously, all this is pure speculation as present trial counsel has not been afforded the opportunity to provide reasons for the alleged deficient acts and omissions. As has been often noted, no Texas court defines the right to effective assistance of counsel as the right to error-free counsel. See *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim.App.1990); *Mercado v. State*, 615 S.W.2d 225, 228 (Tex.Crim.App.1981); *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim.App.1980). From the state of the record before us, appellant has failed in her burden to show trial counsel's performance fell below an objective standard of reasonableness. See *Rylander*, 101 S.W.3d at 110. Issue seven is overruled.[5]

 Appellant's concluding issue argues "[t]he evidence was factually insufficient to support the jury's verdict that appellant was guilty of simple assault be-

yond a reasonable doubt, and judgment should be reversed." In a factual sufficiency review, we review all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Ross v. State*, 133 S.W.3d 618, 620 (Tex.Crim.App.2004).[6] Even in a neutral light, evidence in support of the verdict came in the form of testimony from the victim, [M.E.P.], and the victim's brother, [D.L.L.]. Additionally, one student eye-witness testified that she observed appellant "push [M.E.P.] over the table. She reached over the table and pushed her.... So, [M.E.P.] was standing on this side; and when she [appellant] pushed her [M.E.P.], she pushed her into the wall. Her head hit the wall." Another student eye-witness testified that "[appellant] proceeded to turn around and shove [M.E.P.] into the wall, and [M.E.P.] hit the ground." When asked if he observed appellant being provoked into pushing [M.E.P.], this student stated he did not.

In addition to the denial by appellant that any offensive contact by her took place, the defense also elicited the following description of events from another student eye-witness present at the school when the incident occurred:

admitted to deficient performance and later found prejudice as a result of the deficient performance. *Id.* at 632, 636. The Court granted Varelas relief and ordered a new trial for him. *Id.* at 636.

**6.** See also *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004); *Zuniga v. State*, 144 S.W.3d 477, 481–82 (Tex.Crim.App. 2004); *Vodochodsky v. State*, —— S.W.3d ——, ——, No. 74129, 2004 WL 840121, at *6 (Tex.Crim.App. April 21, 2004)(not yet released for publication).

**5.** For a compelling example of the importance of providing an evidentiary basis for an ineffective assistance claim, see *Ex parte Varelas*, 45 S.W.3d 627 (Tex.Crim.App.2001). Varelas's conviction for capital murder and death sentence were affirmed on direct review by the Court of Criminal Appeals in the face of, inter alia, an ineffective assistance challenge because of "an otherwise silent record." *Id.* at 629, 632. However, Varelas's post-conviction habeas corpus application was accompanied by an affidavit from his trial counsel admitting the omissions at trial were not the result of trial strategy. *Id.* at 632. The Court found trial counsel's affidavit

Q. [Trial Counsel]: Could you see [M.E.P.]?

A. [Student]: I saw her. She had come and was across the table. When I stopped what I was doing and I walked towards there and people were going towards there because there was obviously something going on. Just heard a lot of loud noises and some movement and I'm short. But, I mean, there were people moving over there and I looked in and I saw him, [D.L.L.], come around the table and he was still hollering at this point and just—it was more like just hearing loud noises. It's like one of those things something flashes in your head and something's really wrong and [M.E.P.] had come in and she was like where he had been across the table from Mrs. Modica. And I saw—I saw him like, I don't know, lunge maybe. His shoulder like went into her, and he was obviously reaching for her.

Q. You saw that?

A. That's all I could see on—on his part that he was—I don't want to say throwing himself into her but he lunged at her, I guess, with his shoulder.

. . . .

Q. Where was [M.E.P.] when this actually took place?

A. She was across the table like—you know, sitting—standing kind of across the table from like where she would be sitting now, where Mrs. Modica is and [M.E.P.] was kind of across the table and she was reaching across the table.

Q. Okay. Did you see—well, as a result of [D.L.L.]'s actions, what happened?

A. I saw him lunge into her and she kind of knocked sideways and I saw [M.E.P.] grabbing at her and then there was a whole lot of people around.

Q. In the room or just out—

A. And she was—coming towards—I mean, in that room there were already people and then it was—I mean, people were coming, you know, to see what was happening because you could hear a scuffle and you could hear the loudness.

Q. Okay. Now—

A. And I went back to my station after that. I was packing up.

Q. Okay. Were you the only one who started to pack up?

A. I don't think so because it made everybody really nervous.

Q. Okay. Did you see Mrs. Modica do anything to [D.L.L.]—

A. No.

Q. —physically?

A. No, sir.

Q. Okay. Did you see Mrs. Modica do anything to [M.E.P.]?

A. Not—not what I could see. She—she couldn't have got to her. I mean, I guess she could have reached across the table maybe but I didn't see any of that. After I saw the main—what I thought was the main scuffle of it, I thought "I'm getting my stuff and I'm leaving," but I didn't see—she was—I don't know. She was—it's like she was reaching or digging for something. You could see that, but that's all I could tell she was doing.

Q. Okay. Did you see [M.E.P.] physically being pushed back into a wall?

A. Oh, no, sir.

This student also stated that shortly after the "scuffle," she observed [M.E.P.] "running towards the front door," and [M.E.P.] was not being assisted, carried, or aided by anyone.

There is no question but that the record contains testimony in support of both appellant's and the State's theory of prosecution. Viewing all the evidence in a neutral light, as we must, we simply cannot say that the State's evidence is so weak that

the jury's verdict is clearly wrong and manifestly unjust. *Ross,* 133 S.W.3d at 620. Nor can we say that evidence favorable to appellant is so strong that the State's evidence could not have met the standard for criminal conviction—proven beyond a reasonable doubt. Id. The evidence is factually sufficient to support the jury's verdict. Issue eight is overruled. In connection with our resolution of issue one, we reform the judgment of the trial court, substituting the properly-worded offense "Assault," for the improperly worded term "City Appeal—Other," wherever necessary. See Tex.R.App. P. 43.2(b); *Cobb v. State,* 95 S.W.3d 664, 668 (Tex.App.-Houston [1st Dist.] 2002, no pet.)(" 'An appellate court has the power to correct and reform a trial court judgment to make the record speak the truth when it has the necessary data and information to do so[.]' ")(quoting *Nolan v. State,* 39 S.W.3d 697, 698 (Tex.App.-Houston [1st Dist.] 2001, no pet.)). As so reformed, the judgment of the trial court is affirmed.

AFFIRMED AS REFORMED.