In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-044 CR


____________________



DARRELL EUGENE ALEXANDER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Court Cause No. 04-11-09537-CR






MEMORANDUM OPINION


 A jury convicted appellant Darrell Eugene Alexander of burglary of a habitation and
assessed punishment at seventy years of confinement. Alexander filed this appeal, in which
he raises eight issues for our consideration. We affirm.



The Evidence


 Thomas Allen Fulghum, Jr. testified he works as a field supervisor of mowing for
Montgomery County. On the morning of July 9, 2004, Fulghum was mowing along
Highway 105 when a two-toned Suburban that passed twice at a high rate of speed caught
his attention. Fulghum noticed the vehicle's bumpers were damaged. Fulghum also saw the
Suburban leaving the driveway of a house, and he observed two males sitting in the front of
the vehicle. As the vehicle was backing out of the driveway, the passenger got out, slammed
the vehicle's back door, and ran back to the vehicle. The Suburban then sped away. 
Fulghum testified the passenger was wearing whitish shorts, a light-colored T-shirt, and
tennis shoes. He described the passenger as being five feet nine to five feet eleven inches
tall, of medium build, and dark-haired. Fulghum estimated he was approximately sixty yards
away from the driveway. Fulghum testified he did not observe the passenger's face
sufficiently to identify him later. 

 According to Fulghum, the occupants of the house approached him and asked whether
he had seen anyone leaving their property, and he told them what he had observed. Fulghum
testified he noticed one of the entrances to the property was damaged. Fulghum also reported
his observations to the sheriff's department and gave a written statement. In his statement,
Fulghum indicated the passenger was a Hispanic male. 


 Complainant testified his home was burglarized on July 9, 2004. Complainant became
aware of the burglary when he received phone calls from Brinks Home Security and his wife
about multiple alarms sounding in his home. He went to his home and discovered the kitchen
door and back door had been kicked open. He also noticed his entertainment center had been
moved and the television set was gone. He testified that "everything in the bedroom had
been gone through" and his wife's jewelry was missing. 

 While calling the sheriff's department, complainant noticed tire tracks in the grass
leading to his back door. He followed the tire tracks back to the street, and observed
Fulghum mowing. Complainant told Fulghum what had transpired and asked whether he had
any information. When personnel from the sheriff's department arrived, they took
photographs, fingerprints, and obtained a statement from complainant. Complainant also
took photographs. In his statement, complainant indicated he owns the home and the missing
property, and he did not give anyone permission to remove the property. 

 Complainant's wife testified that on July 9, 2004, she received a phone call at work
from Brinks Home Security about alarms sounding in her home. Upon arriving at her home,
she noticed the kitchen door was damaged, and the television set and the contents of her
jewelry box were missing. She described her bedroom as "torn pretty much in pieces." 
According to her, the speaker box on the alarm system was also damaged. She also noticed
tracks in the yard like someone had driven up to the back door. A sheriff's deputy arrived
and spoke with her and her husband. The deputy also took photographs and attempted to lift
fingerprints. Later that day, she received a call from Trooper Campos, who told her a suspect
was in custody and asked her to identify some of the missing belongings. She testified some
of her belongings were returned to her after she identified them. 

 Sergeant Dwayne Finley of the Montgomery County Sheriff's Department testified
he responded to complainant's call regarding the burglary of his residence. Upon arriving
at the location, Sergeant Finley was approached by Fulghum, who told him about the vehicle
he had seen leaving the driveway. According to Sergeant Finley, Fulghum described the
vehicle as an older model tan and brown Chevy Suburban that might have been damaged by
running over the gate. Sergeant Finley testified Fulghum also described seeing the passenger
get out of the vehicle and slam the back door. Fulghum told Sergeant Finley the passenger
was wearing a blue shirt, white shorts, and tennis shoes. Fulghum described the passenger
as a Hispanic male. Sergeant Finley then broadcast on the radio that the vehicle had been
involved in a burglary. 

 After broadcasting the information about the vehicle, Sergeant Finley spoke with
complainant. Sergeant Finley observed that one of complainant's gates was pushed off its
hinges and someone had kicked in two doors to the house. Upon entering the house,
Sergeant Finley noticed the television set was missing from the entertainment center, the
bedroom "had been gone through[,]" and the jewelry box drawers were empty. Sergeant
Finley took photographs of all the evidence and unsuccessfully attempted to obtain latent
fingerprints. 

 Corporal David Campos of the Texas Department of Public Safety testified that on
July 9, 2004, while finishing a traffic stop, he saw an older brown Suburban with damage to
the rear end. Corporal Campos realized the Suburban matched the description that had been
broadcast earlier that day of a vehicle involved in a burglary. Corporal Campos noticed the
occupants of the vehicle were trying to look at him without turning their heads, and he began
following the vehicle. He also observed the license plate was difficult to read, dirty, and
damaged. Corporal Campos decided to conduct a traffic stop to see if the occupants of the
vehicle were involved in the burglary. 

 After stopping the Suburban, Corporal Campos ordered the driver (later identified as
Alexander) and the passenger to get out of the vehicle. According to Corporal Campos,
Alexander was wearing light-colored tan shorts and a white T-shirt with a "gray-bluish"
picture on it. The back of the T-shirt also had blue figures or lettering on it. Corporal
Campos described Alexander as approximately six feet two inches tall, blue-eyed, and Anglo
or Caucasian. 

 After the passenger got out of the vehicle, Corporal Campos patted him down and
discovered drug paraphernalia and a pocket knife. Corporal Campos observed the passenger
was glassy-eyed and appeared to be "under the influence of something." When Corporal
Campos patted Alexander down, he did not find weapons. He arrested the passenger and
brought both men to the rear of the vehicle. Before performing a search incident to arrest,
Corporal Campos handcuffed Alexander for safety reasons and called for backup. While
waiting for backup, Corporal Campos began searching the vehicle, and he noticed a
pillowcase full of knives and a Crown Royal bag filled with ammunition. Corporal Campos
also found a black gym bag and a backpack in the vehicle. The bag contained a large knife. 
Alexander told Corporal Campos the gym bag belonged to him. 

 Believing the vehicle might contain additional weapons, Corporal Campos waited for
backup. Officer Allemore of the Conroe Police Department arrived, and Corporal Campos
asked Officer Allemore to watch the subjects while he searched the vehicle. During his
search, Corporal Campos found a loaded .22-caliber handgun between the passenger's seat
and the console. Corporal Campos also found jewelry, another loaded .22-caliber handgun,
other knives, drug paraphernalia, and a wallet containing Alexander's identification. Officer
Allemore placed Alexander and the other suspect in the back of his patrol car. Corporal
Campos took photographs at the scene, and the video camera in his vehicle recorded the
traffic stop and search of the vehicle. Corporal Campos seized the weapons and turned the
scene over to the sheriff's department. He testified that he also spoke with complainant's
wife, who identified some of the jewelry found in the vehicle. Corporal Campos testified the
other suspect never indicated that Alexander had not participated in a burglary.

 Officer Bryan Allemore testified he responded to Corporal Campos's call for backup.
Upon arriving at the scene, Officer Allemore observed that Corporal Campos had detained
two subjects. Officer Allemore placed the subjects in his vehicle and began helping Trooper
Campos search the subject vehicle. Officer Allemore located a small handgun inside a
backpack. Alexander's wallet was also inside the backpack. Before the suspects were placed
in Officer Allemore's vehicle, neither suspect said Alexander was not at the scene of the
burglary. 

 Detective Keith Eckols of the Montgomery County Sheriff's Office testified the
burglary case was to be assigned to him. Upon arriving at the scene, he took custody of the
recovered property. Detective Eckols then followed the suspects' vehicle to the impound
yard and met the complainant's wife, who gave a written statement and identified some of
the property. After releasing the property to complainant's wife, Detective Eckols spoke
with the other suspect, who admitted he was present at the burglary but stated Alexander was
not. 

 Detective Eckols testified he filed charges against Alexander based upon Trooper
Campos's statements that some of the stolen property and Alexander's wallet were found in
a backpack inside the vehicle. Alexander told Detective Eckols he had been attempting to
repossess a truck with Russell Schoonover when the burglary occurred. Alexander also told
Detective Eckols that the other suspect had borrowed the Suburban. When Detective Eckols
interviewed Schoonover, Schoonover indicated Alexander was with him the night before the
burglary, but Alexander had left at approximately midnight. 

 Russell Schoonover testified Alexander went with him on a "repo" at about ten
o'clock p.m. on the evening of July 8, 2004. According to Schoonover, Alexander was with
him until twelve or twelve thirty a.m. Schoonover stated he did not see Alexander again until
mid-afternoon, when he saw Alexander's vehicle being stopped by a DPS officer.
Schoonover admitted he was previously convicted of felony theft. 

 Christina Valdez, the general manager of Motel 6 in Conroe, testified Alexander
rented a room on July 8 and 9, and check-out time is at or before 12:00 noon. Carlos Lamar
Radcliff testified he was a guest at the Motel 6 in July, and he saw Alexander there near the
beginning of the month shortly before noon. Radcliff did not recall the exact date he saw
Alexander, but stated it was not more than about one week after July 1. Radcliff testified he
is currently incarcerated for delivery of a controlled substance, and he was also convicted of
the same offense in 1992. Radcliff received ten years of shock probation in 1991, and he was
also charged with attempted homicide. 

Alexander's First Issue


 In his first issue, Alexander contends the trial court erred by allowing a leading
question during the State's direct examination of a witness. The question of which
Alexander complains occurred during the State's examination of Fulghum, as follows:

 Q. When you were on 105, what if any vehicle caught your
attention? 

 

 A. The two-toned Suburban that went by at a high rate of speed.


 Q. And did that Suburban go by on one occasion, or on more than
one occasion?


 A. There were two occasions.


 [Defense counsel]: Object to the leading, Your Honor.


 THE COURT: Overruled.


 A leading question is one which obviously suggests a particular answer to the witness. 
Tinlin v. State, 983 S.W.2d 65, 70 (Tex. App.--Fort Worth 1998, pet. ref'd). During the
above exchange, the witness testified that a vehicle caught his attention when it passed by
at a high rate of speed. The prosecutor's question regarding whether the vehicle passed by
once or more than once in no way suggested a particular answer. See id. Alexander's first
issue is overruled.

Alexander's Second Issue


 In his second issue, Alexander asserts "the trial court erred in allowing the prosecutor
to improperly phrase questions as an affirmative assertion of an unproven fact, injecting new
facts, prejudicial to the accused, into the trial." Alexander complains of the following
exchange:


 (AT THE BENCH, OUT OF THE HEARING OF THE JURY)


 [Prosecutor]: Your Honor, could I ask that the jury be escorted
into the jury room for a moment, please?


 THE COURT: Why?


 [Prosecutor]: Something has just come to my attention about
some possibly improper behavior on the part of [defense counsel].


 THE COURT: All right. Ladies and gentlemen, if you would,
temporarily go into the jury room while I discuss some matters outside your
presence.


 (JURY NOT PRESENT)


The record clearly reflects the prosecutor's comment about "possibly improper behavior"
was made at the bench, out of the hearing of the jury. Furthermore, the record reflects
defense counsel did not object to the prosecutor's statement. Accordingly, Alexander has
failed to preserve this issue for review. See Tex. R. App. P. 33.1(a)(1)(A). Alexander's
second issue is overruled.

Alexander's Third Issue


 In his third issue, Alexander maintains the trial court erred by allowing the admission
of hearsay testimony. Alexander complains of the following exchange during the State's
examination of Sergeant Finley:

 Q. And what description, if any, did he give you of that vehicle?


 A. He told me it was an older model -


 [Defense counsel]: I object. This answer calls for hearsay, Judge.


 [Prosecutor]: Your Honor, a description of anything witnesses
tell this sergeant is not hearsay. I have case law.


 THE COURT: Yeah, it's an exception. I overrule your objection.


 Q. [Prosecutor]: Would you please proceed?


 A. Yes, ma'am. He told me it was an older model, tan and brown
Chevy Suburban.


 Hearsay is an out-of-court statement that is offered to prove the truth of the matter
asserted. Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). "An extrajudicial
statement . . . which is offered for the purpose of showing what was said rather than for the
truth of the matter stated therein does not constitute hearsay." Id. In this case, Sergeant
Finley's recounting of Fulghum's description merely explained why Sergeant Finley
broadcast the description of the vehicle, which led to Alexander becoming a suspect. 
Because Sergeant Finley's testimony was not offered for the truth of the matter asserted, it
did not constitute hearsay. See Jones v. State, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992)
(Police officer's repetition at trial of witness's out-of-court statements implicating the
defendant was not hearsay because the statements were admitted to explain how defendant
became a suspect, not for the truth of the matter asserted.).


 Even if the testimony had constituted hearsay, we find any error would have been
harmless. Alexander must demonstrate that the admission of Sergeant Finley's testimony
affected his substantial rights. See Tex. R. App. P. 44.2(b); Tex. R. Evid. 103(a); King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The same testimony Sergeant Finley
offered regarding Fulghum's description of the Suburban was also offered by Fulghum and
Corporal Campos. Because the testimony of Sergeant Finley was cumulative of that offered
by Fulghum and Corporal Campos on the same matter, the admission of Sergeant Finley's
testimony, even if error, was harmless. See id; see also Matz v. State, 21 S.W.3d 911, 912
(Tex. App.--Fort Worth 2000, pet. ref'd) (Admission of evidence is not reversible error if the
same facts are proven by other properly admitted evidence.). Alexander's third issue is
overruled.

Alexander's Fourth Issue


 In his fourth issue, Alexander argues the trial court violated his Fifth Amendment
rights by allowing the prosecutor to comment on his post-arrest silence. During the State's
examination of Officer Allemore, the following colloquy took place:

 Q. All right. At any time did either of the suspects tell you that
Darrell Alexander had not been at the scene of the burglary?


 A. No, ma'am.


 Q. At any time did you hear either of the suspects tell Trooper
Campos that Darrell Alexander had not been at the scene of the
burglary?


 A. No, ma'am.


 Q. And of course this would have been before they were placed
together in the back seat of the vehicle for a half an hour, would
it not?


 A. Yes, ma'am.


 Q. So, prior to their being placed in the back seat of the vehicle for
half an hour, to your knowledge, no comments were made
regarding the fact that Mr. Alexander was not at the scene of a
burglary?


 A. No, ma'am.


Defense counsel did not object. Therefore, this issue is not preserved for our review. See
Tex. R. App. P. 33.1(a)(1); Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004)
(Failure to object waives complaint regarding alleged comment on post-arrest silence.). 
Alexander's fourth issue is overruled.

Alexander's Fifth Issue


 In his fifth issue, Alexander argues the trial court erred in allowing the prosecutor to
make a direct expression of her belief in his guilt. During closing arguments, the prosecutor
stated, 

 when every attorney in this room was sworn in by the State Bar of Texas, we
all took an oath to defend our clients with zeal and to the best of our ability. 
But as an assistant district attorney, I had to take a second oath, an additional
oath. And my oath as an assistant district attorney is to do justice.

Alexander contends "[t]he prosecutor was implying that she would never take someone to
trial that wasn't guilty. The prosecutor was impliedly asking the jury to believe her and find
the appellant guilty." 

 Proper jury argument falls within one of four categories: (1) summary of the evidence;
(2) reasonable deduction from the evidence; (3) response to argument of opposing counsel;
and (4) plea for law enforcement. Long v. State, 823 S.W.2d 259, 267 (Tex. Crim. App.
1991). The prosecutor's statement here neither directly nor impliedly stated her personal
belief in Alexander's guilt. Rather, the prosecutor's statement was a permissible plea for law
enforcement. See id.; see also Buffington v. State, 801 S.W.2d 151, 157 (Tex. App.--San
Antonio 1990, pet. ref'd) (Prosecutor's argument that "I believe in what I do. I believe in
justice[.]" was merely a plea for law enforcement and a proper sentence.). Alexander's fifth
issue is overruled.

Alexander's Sixth and Seventh Issues


 In his sixth and seventh issues, Alexander asserts the evidence was legally and
factually insufficient to support his conviction because the State failed to prove he entered
a habitation. We address these issues together. In reviewing issues of legal sufficiency, an
appellate court views the evidence in the light most favorable to the verdict to determine
whether a rational fact finder could have found each element of the offense beyond a
reasonable doubt. Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). In
Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004), the Court of Criminal
Appeals phrased the standard for a factual sufficiency review as follows: 

 Considering all of the evidence in a neutral light, was a jury rationally justified
in finding guilt beyond a reasonable doubt? However, there are two ways in
which the evidence may be insufficient. First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt
beyond a reasonable doubt. Second, there may be both evidence supporting
the verdict and evidence contrary to the verdict. Weighing all the evidence
under this balancing scale, the contrary evidence may be strong enough that
the beyond-a-reasonable-doubt standard could not have been met, so the guilty
verdict should not stand. This standard acknowledges that evidence of guilt
can "preponderate" in favor of conviction but still be insufficient to prove the
elements of the crime beyond a reasonable doubt. Stated another way,
evidence supporting guilt can "outweigh" the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard. 


An appellate court "must give due deference to the fact finder's determinations concerning
the weight and credibility of the evidence. . . ." Swearingen, 101 S.W.3d at 97. It is the sole
province of the jury to determine the credibility of witnesses and to weigh contradictory
testimony. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).

 Section 30.02 of the Texas Penal Code provides, in pertinent part:

 (a) A person commits an offense if, without the effective consent of
the owner, the person:


 (1) enters a habitation, or a building (or any portion
of a building) not then open to the public, with
intent to commit a felony, theft, or an assault; or

 

 . . . .


 (3) enters a building or habitation and commits or
attempts to commit a felony, theft, or an assault.


 (b) For purposes of this section, "enter" means to intrude:


 (1) any part of the body; or


 (2) any physical object connected with the body.


Tex. Pen. Code Ann. § 30.02 (Vernon 2003).

 Complainant testified he had not given anyone permission to remove property from 
his residence. Both complainant and his wife noticed tire tracks in their yard. Fulghum
testified he saw a two-toned Suburban with damaged bumpers leaving the driveway of
complainant's house. Alexander and his passenger were later stopped in a vehicle matching
the broadcast description. Some of the complainant's wife's belongings were recovered from
the vehicle Alexander was driving. A number of weapons, including two loaded handguns,
were also recovered from the vehicle. Alexander admitted ownership of the recovered gym
bag, which contained a large knife. Alexander's wallet was also recovered from the vehicle.

 The entry element of burglary may be proved by circumstantial evidence. Clark v.
State, 543 S.W.2d 125, 127 (Tex. Crim. App. 1976). In addition, the jury was charged
pursuant to the law of parties, as follows:

 All persons are parties to an offense who are guilty of acting together
in the commission of an offense. A person is criminally responsible as a party
to an offense if the offense is committed by his own conduct, by the conduct
of another for which he is criminally responsible, or by both. Each party to an
offense may be charged with the commission of the offense.


 A person is criminally responsible for an offense committed by the
conduct of another if, acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense. Thus, depending on the circumstances, a person
may be a party to an offense whether or not they were present during, or
participated in, the actual commission of the offense.


Viewing the evidence in the light most favorable to the verdict, a rational jury could have
concluded beyond a reasonable doubt that Alexander was guilty of burglary of a habitation. 
See id.; see also Tex. Pen. Code Ann. §§ 7.01(c), 30.02 (Vernon 2003); Swearingen, 101
S.W.3d at 95. The evidence is legally sufficient to support the verdict. Furthermore, the
evidence supporting the verdict is not too weak, nor is the contrary evidence so strong that
the burden of proof could not be met. See Zuniga, 144 S.W.3d at 484-85. The evidence is
factually sufficient to support the verdict. Alexander's sixth and seventh issues are
overruled.

Alexander's Eighth Issue


 In his final issue, Alexander argues the cumulative effect of the alleged errors asserted
in issues one through seven "amplifies their magnitude" such that when they are considered
together, they "raise the level of error significantly," making "the whole of the error . . .
greater than the sum of its parts." Finding no error, we have overruled each of Alexander's
issues. The cumulative effect of alleged errors, which in fact do not exist, does not create
reversible error. See Chamberlain, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("[W]e are
aware of no authority holding that non-errors may in their cumulative effect cause error.");
Modica v. State, 151 S.W.3d 716, 727 (Tex. App.--Beaumont 2004, pet. ref'd). Alexander's
eighth issue is overruled. The judgment of the trial court is affirmed.

 AFFIRMED. 



 STEVE McKEITHEN

 Chief Justice



Submitted on November 3, 2005

Opinion Delivered December 7, 2005

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.