In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00301-CR


____________________



EX PARTE FARAN YUSAFI






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 04-07-05410-CR-(1)






MEMORANDUM OPINION


 Faran Yusafi appeals an order by the trial court denying his application for writ of
habeas corpus filed pursuant to article 11.072 of the Code of Criminal Procedure. Tex. Code
Crim. Proc. Ann. art. 11.072 (Vernon 2005). Yusafi is seeking relief from a judgment of
conviction ordering community supervision in a felony case. Id. § 1. We have appellate
jurisdiction over such an appeal. See id. §§ 4, 8; Ex parte Villanueva, 252 S.W.3d 391, 397
(Tex. Crim. App. 2008). (1)

 Yusafi presents three issues for our consideration:

 1. The trial court abused its discretion in denying the application for a writ of
habeas corpus.


 2. Appellant was denied his constitutional right to effective assistance of
counsel, as counsel failed to challenge on direct appeal the denial of
appellant's pre-trial motion to suppress evidence. 


 3. Appellant was denied the effective assistance of counsel at the guilt-innocence phase of trial as guaranteed by the Fifth, Sixth and Fourteenth
Amendments to the United States Constitution. 


STANDARD OF REVIEW


 Absent a clear abuse of discretion, we must affirm a trial court's decision on whether
to grant the relief requested in a habeas corpus application. Ex parte Bruce, 112 S.W.3d 635,
639 (Tex. App.--Fort Worth 2003, pet. denied). In reviewing the trial court's decision, we
view the evidence in the light most favorable to the ruling and accord great deference to the
trial court's findings and conclusions. Id. When the trial court's findings of fact are
supported by the record they should be accepted by the reviewing court. Ex parte Amezquita,
223 S.W.3d 363, 367 (Tex. Crim. App. 2006); Ex parte Briseno, 135 S.W.3d 1, 12 (Tex.
Crim. App. 2004). However, if the trial court's ruling is not supported by the record, we may
reject the findings. Briseno, 135 S.W.3d at 13. Should a given finding or conclusion be
immaterial to the issue or irrelevant to our disposition, we may decline to consider said
finding or conclusion and, instead, consider the findings and conclusions that are supported
by the record and are germane to the resolution of the habeas appeal. See generally Ex parte
Reed, 271 S.W.3d 698, 728-29 (Tex. Crim. App. 2008) (concluding that the few instances
in which the findings were inconsistent or misleading did not justify a decision to totally
disregard the findings that were supported by the record and were germane to the resolution
of defendant's claims). Additionally, great deference to the trial court's determinations must
be given even when all of the evidence is submitted by affidavits. See Ex parte Wheeler, 203
S.W.3d 317, 325-26 (Tex. Crim. App. 2006); Manzi v. State, 88 S.W.3d 240, 244 (Tex. Crim.
App. 2002).

 In a writ of habeas corpus hearing, the burden is on the applicant to prove by a
preponderance of the evidence that an error contributed to his conviction or punishment. Ex
parte Williams, 65 S.W.3d 656, 658 (Tex. Crim. App. 2001). Furthermore, where, as in the
instant case, applicant's principal habeas complaint regarding ineffective assistance is that
his counsel failed to litigate a Fourth Amendment claim competently, the applicant must also
prove that his Fourth Amendment claim is meritorious and, having so proven, that there is
a reasonable probability that the verdict would have been different absent the excludable
evidence in order to demonstrate the actual prejudice prong of Strickland v. Washington. (2) 
See Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986);
Jackson v. State, 973 S.W.2d 954, 956-57 (Tex. Crim. App. 1998); Hollis v. State, 219
S.W.3d 446, 456 (Tex. App.--Austin 2007, no pet.).

INEFFECTIVE ASSISTANCE OF COUNSEL


 A successful claim that one's trial or appellate counsel provided ineffective assistance
requires a demonstration by a preponderance of the evidence (1) that counsel's representation
fell below an objective standard of reasonableness, and (2) there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding would have been
different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
Ex parte Santana, 227 S.W.3d 700, 704-05 (Tex. Crim. App. 2007); Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). Both Strickland prongs must be firmly founded
in the record. See Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 

 BACKGROUND


 We granted Yusafi's appellate motion requesting the court take judicial notice of both
the clerk's and reporter's records from his direct appeal. Therefore, the factual rendition
includes, among others, those details set out in our opinion on direct appeal. See Yusafi v.
State, No. 09-05-521 CR, 2006 WL 2883112, at **1-2 (Tex. App.--Beaumont Oct. 11, 2006,
pet. ref'd) (not designated for publication).

 Yusafi was indicted on July 13, 2004, for the offense of Possession or Promotion of
Child Pornography, a third degree felony. Tex. Pen. Code Ann. § 43.26(a), (d) (Vernon
2003). Yusafi initially retained W. E. Herman, III as his trial counsel. Herman filed a
pretrial motion to suppress Yusafi's personal computers from which the child pornography
was extracted, and was the attorney who presented the suppression motion at a hearing held
on April 8, 2005. The suppression motion contained three paragraphs; the first alleging
Yusafi was "detained and arrested . . . . without a warrant and contrary to Chapter 14 of the
Texas Code of Criminal Procedure." Paragraph one also contended that the "fruits" of
Yusafi's detention and arrest "namely a search of Defendant's personal computer by the FBI
based upon consent, should be suppressed pursuant to Article 38.22 of the Texas Code of
Criminal Procedure." 

 The second paragraph of Yusafi's suppression motion also requested suppression of
the computer evidence as any consent granted by Yusafi was involuntarily secured and for
such reason the evidence should also be suppressed pursuant to article 38.23 of the Code of
Criminal Procedure. In its entirety, the third paragraph reads as follows: 

 3. The Defendant would further show that the possession of his personal
computer was obtained without a warrant and contrary to Article 38.23 of the
Texas Code of Criminal Procedure and in violation of the First and Fourth
Amendments to the U.S. Constitution and Article I, sections 9 and 10 of the
Texas Constitution. 


 The reporter's record from the suppression hearing indicates that Yusafi was neither
detained nor arrested prior to the search of his two home computers. Yusafi was merely
interviewed at his place of employment, Texas Department of Criminal Justice ("TDCJ"),
by Nathan Ward, an inspector with TDCJ. From all indications, Yusafi simply returned to
work following his interview with Ward. Therefore, the allegations made in paragraph one
of the suppression motion are not supported by the evidence. 

 We also find the contentions raised in paragraph three were not ruled on by the trial
court. Approximately midway through the testimony, the entire focus of the hearing changed
from the legality of Yusafi's wife taking possession of the computers from the marital
residence and turning them over to the authorities at TDCJ, to the voluntariness of Yusafi's
written consent to search his computers which he signed during his interview with Ward and
prior to the search of the computers by the Secret Service. The trial court's ruling at the
conclusion of the testimony appears in the record as follows: 

 THE COURT: Okay. I'm going to deny your motion to suppress. I
think that he signed the consent. I think that it was -- I believe the officer
explained the difference of the two things. I think that he's still employed. It
is not like they are going to fire him immediately. So, I am denying your
motion to suppress. There you have it. 

 Less than two weeks following the suppression hearing, Yusafi retained new counsel,
substituting Mr. Herman with Michael E. Harssema. On the same day he moved to substitute
Mr. Harssema as new trial counsel, Yusafi also filed a motion to withdraw a previously
executed waiver of the right to a jury trial, and requested a jury trial. Additionally, he
executed and filed a written instrument titled, "Rejection of Plea Agreement," in which he
formally rejected, against the advice of his "former attorney," a punishment recommendation
by the State described as, "Deferred adjudication with no jail time; generally with no
specifics." 

 On September 14, 2005, Yusafi again moved to substitute his trial counsel, replacing
Mr. Harssema with Don D. Becker. The trial court permitted the substitution. It is Mr.
Becker who, thereafter, represented Yusafi during the jury trial which took place November
14 and 15 of 2005. The jury found Yusafi guilty of having possessed child pornography "as
charged in the indictment." The parties then reached an agreement as to punishment
consisting of confinement in the Texas Department of Criminal Justice, Correctional
Institutions Division for a term of ten years, and a fine of one thousand dollars. The
agreement also called for Yusafi's incarceration to be suspended for a period of ten years
coinciding with a like number of years on community supervision. The trial court's judgment
of November 15, 2005, reflects the terms of the agreement. (3) No motion for new trial was
filed, but appeal was timely pursued by Yusafi's newly retained appellate counsel, Mike
Aduddell. In Yusafi v. State, No. 09-05-521 CR, 2006 WL 2883112 (Tex. App.--Beaumont
Oct. 11, 2006, pet. ref'd) (not designated for publication), this Court rejected Yusafi's lone
appellate issue complaining of ineffective assistance of trial counsel [Don D. Becker]. 

 On February 1, 2008, again represented by new counsel, Yusafi filed the present writ
application with the trial court, requesting relief from the judgment of conviction and order
of community supervision. As is its prerogative under article 11.072, the trial court
entertained Yusafi's application via affidavits. See Tex. Code Crim. Proc. Ann. art. 11.072,
§ 6(b) ("In making its determination, the court may order affidavits, depositions,
interrogatories, or a hearing, and may rely on the court's personal recollection."); see also
Ex parte Faulkner, No. 09-05-478 CR, 2006 WL 3094339, at *3 (Tex. App.--Beaumont
April 4, 2007, pet. ref'd) (not designated for publication).

 In his writ application to the trial court, Yusafi raised four grounds for relief: 

 1. Applicant was denied the effective assistance of counsel on appeal as
guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United
States Constitution.


 2. Applicant was denied the effective assistance of counsel on appeal as
guaranteed by Article I, Section 10 of the Texas Constitution.


 3. Applicant was denied the effective assistance of counsel at the guilt-innocence stage of trial as guaranteed by the Fifth, Sixth, and Fourteenth
Amendments of the United States Constitution.


 4. Applicant was denied the effective assistance of counsel at the guilt-innocence stage of trial as guaranteed by Article I, Section 10 of the Texas
Constitution. 

 At the heart of Yusafi's writ request is his assertion that the child pornography
extracted from his two home computers was inadmissible at trial, and but for the ineffective
assistance of either his trial counsel or his appellate counsel, or both, the trial court would
have agreed and suppressed all the photographs. Yusafi's writ application devotes several
paragraphs to the alleged "warrantless seizure" of the computers, but only a single paragraph
generally complaining that his written consent to search was executed involuntarily. 

 The trial court denied all relief requested by Yusafi and filed findings of fact and
conclusions of law. Pertinent to Yusafi's "warrantless seizure" complaint, the following
findings and conclusion relate to trial counsel's purported ineffectiveness: 

FINDINGS OF FACT


 14. Based on the affidavits of Mr. Becker, trial counsel made no objection to
the admission of the computers and the digital image files on the basis of an
illegal search and seizure because he "was aware of the fact that the Court had
ruled the items were admissible." 


 15. Moh Yusafi testified that she was married to Applicant at the time of the
events at issue in the case, including at the time she went and retrieved the
computers. 


 16. Applicant does not demonstrate a reasonable probability that, but for
counsel's waiver of his argument that the computers and the digital image files
were illegally seized and searched, the outcome of the trial or the appeal would
have been different. 


CONCLUSIONS OF LAW



 7. Because it was Applicant's wife, to whom he was still married, who entered
the home and obtained the computers, there was no illegal seizure, see Burge
v. State, 443 S.W.2d 720, 722 & n.2 (Tex. Crim. App. 1969), and Applicant
was not prejudiced by trial counsel's waiver of such a complaint. 


 In the instant appeal, Yusafi does not complain of the above findings or conclusion
as applied to trial counsel, but only as to appellate counsel. Specifically appellant argues that
appellate counsel failed to challenge the validity of the seizure of appellant's computers and
only contests the applicability of Burge v. State in a footnote, which states that Burge "is
materially distinguishable in that it concerned the authority of a spouse to consent to the
search of her home." Yet, Burge recognized, inter alia, that in Texas "a wife may consent
to the search of her husband's premises where the consent is given without coercion." See
Burge v. State, 443 S.W.2d 720, 722 (Tex. Crim. App. 1969). The court in Burge held that
evidence seized during the search of appellant's home, consented to by appellant's wife was
admissible. Id. at 723. This holding is relevant to the trial court's finding that Yusafi's wife
"testified that she was married to Applicant at the time of the events at issue in the case,
including at the time she went and retrieved the computers." Additionally, the record
indicates the house had been the marital residence prior to Mrs. Yusafi being asked to leave
the residence. Mrs. Yusafi left on March 7, 2004, and removed the computers in question
from the house on March 15, 2004. 

 In any event, Yusafi does not include an argument on "warrantless seizure" in issue
three, which is the lone habeas appellate issue directed at trial counsel's purported
ineffectiveness. In the overall context of the Strickland standards, Yusafi does not
sufficiently contest the pertinent findings and conclusion, as set out above, which are directed
specifically at trial counsel's performance. See Goodspeed v. State, 187 S.W.3d 390, 392
(Tex. Crim. App. 2005) (restating that ineffective assistance claims must be firmly founded
in the record and that the appellate record must affirmatively demonstrate the meritorious
nature of the claim). Reviewing courts have no obligation to construct or compose an
appellant's issues, facts, or argument. See Busby v. State, 253 S.W.3d 661, 673 (Tex. Crim.
App. 2008). Therefore, Yusafi has failed to present anything for review regarding trial
counsel's purported ineffectiveness in handling the warrantless seizure complaint. TEX. R.
APP. P. 38.1(h). The lone remaining basis preserved at trial for excluding the various
depictions of child pornography extracted from Yusafi's computers and introduced into
evidence before the jury would be that the trial court erred in ruling Yusafi's written consent
to search was given voluntarily. 

ANALYSIS 


 Consent to a search is one of the well-established exceptions to the constitutional
requirements of both a search warrant and probable cause. See Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Ibarra, 953 S.W.2d 242,
243 (Tex. Crim. App. 1997). The test for determining whether a consent to search is valid
is "that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined
from all the circumstances.'" See Ohio v. Robinette, 519 U.S. 33, 40, 117 S.Ct. 417, 421,
136 L.Ed.2d 347 (1996) (quoting Schneckloth, 412 U.S. at 248-49). To be lawful, the
consent must "not be coerced, by explicit or implicit means, by implied threat or covert
force." Schneckloth, 412 U.S. at 228; see also Allridge v. State, 850 S.W.2d 471, 493 (Tex.
Crim. App. 1991) ("The consent must be shown to be positive and unequivocal, and there
must not be any duress or coercion."). Additionally, a valid consent is not established by
"showing no more than acquiescence to a claim of lawful authority." Bumper v. North
Carolina, 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968) (where officer
falsely purported to have valid search warrant, consent not voluntary). 

 While the federal constitution permits the State to prove voluntariness of a consent
by a preponderance of the evidence, the Texas Constitution requires the State to show by
clear and convincing evidence that the consent was freely given. Montanez v. State, 195
S.W.3d 101, 105 (Tex. Crim. App. 2006). Thus, the first issue for us to consider in
determining if Yusafi met his habeas corpus burden of proving ineffective assistance of
counsel is whether, after affording almost total deference to the trial court's determination
of historical facts that are supported by the record, the trial court abused its discretion by
finding that the State proved by clear and convincing evidence that Yusafi voluntarily
consented to the search of his two computers. See id. at 108. 

 Construed in the light most favorable to the trial court's ruling, the suppression
hearing evidence indicates that Yusafi voluntarily cooperated with Inspector Ward during the
interview. Ward clearly explained the difference between the administrative side of his
investigation, which involved Yusafi's work computer, and the criminal side of Ward's
investigation, which focused on Yusafi's two home computers. Ward explained that Yusafi
was required to cooperate with the administrative investigation regarding his workplace
computer, but was free to refuse to cooperate in the investigation of Yusafi's two home
computers. Ward testified that prior to the "criminal" portion of the interview, he informed
Yusafi that anything found on his two personal computers could be used against him in a
court of law, and reminded Yusafi that he did not have to say anything and that he was not
a suspect at that point in time. The written consent to search form which Yusafi signed was
introduced into evidence and included the following language located just above the
signature line: 

 I UNDERSTAND THAT I HAVE THE RIGHT TO REFUSE TO CONSENT
TO THE SEARCH DESCRIBED ABOVE AND TO REFUSE TO SIGN
THIS FORM.


 I FURTHER STATE THAT NO PROMISES, THREATS, FORCE, [OR]
PHYSICAL OR MENTAL COERCION OF ANY KIND WHATSOEVER
HAVE BEEN USED AGAINST ME TO GET ME TO CONSENT TO THE
SEARCH DESCRIBED ABOVE OR TO SIGN THIS FORM.


 From his testimony at the suppression hearing, Yusafi indicated that he was confused
by Ward's explanation of the two different investigations and that he felt disciplinary action
would be taken against him if he refused to comply with "the search." But Yusafi's
testimony was vague in describing the potential ramifications he understood would occur if
he failed to fully cooperate: 

 [Trial Counsel:] Were you concerned about your job?


 [Yusafi:] Yes. I really was because I had - - I thought that was the only way
out is to sign the consent form and then he would let me go. Otherwise, there
would be no way out of it. 


 The State attempted to pin Yusafi down on cross-examination as to what he did and
did not understand with regard to his interview with Ward, with the colloquy appearing in
the record as follows: 

 [State:] You're saying you don't remember anything you had to do but you
remember clearly that he more or less told you if you didn't sign this you
would lose your job.


 [Yusafi:] I had this feeling. I can't remember anything else what you're
talking about.


 [State:] You can't remember that after the administrative hearing (sic) he went
into the investigation that allegations were made that you had pornographic --
well, child pornography on your home computers that your wife had turned
over to them?


 [Yusafi:] Yeah. I had -- I had the knowledge of that.


 [State:] You had the knowledge you had child pornography on your home
computer?


 [Yusafi:] No. I had the knowledge of what the allegations were all about.


 [State:] Okay. And so that's why he asked you for your voluntary consent to
sign it to search your home computers.


 [Yusafi:] He didn't quite explain that. He just made it look like all the search
was connected to this one document that he made me sign; and, no, actually,
let me -- I think I remember now. He -- he said he had this signed -- he had a
consent form signed from the other owner of the computers and now I want
you to sign this, too, because -- since you are the owner of this computer. 
That's all he said.


On re-direct examination, Yusafi testified that he was employed at TDCJ as a computer
programmer. 

 Although the record indicates that Yusafi disputes Investigator Ward's account of the
interview we presume that the trial court resolved the disputed testimony against Yusafi. The
consent form clearly authorized a complete search of the two specified computers owned by
Yusafi. The form also clearly indicated Yusafi had the right to refuse consent. Yusafi
testified that he had worked for TDCJ for five years and was a computer programmer. Under
the totality of the circumstances, the evidence strongly supports a finding that Yusafi's
written consent to the search of his computers was attained voluntarily, and was not "'mere
submission to a claim of lawful authority.'" Compare, e.g., Kaupp v. Texas, 538 U.S. 626,
631, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) (quoting Florida v. Royer, 460 U.S. 491, 497,
103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (suspect's "okay" in response to officer's statement
"we need to go and talk" was a "mere submission to a claim of lawful authority" rather than
voluntary consent to accompany officer); Baldwin v. State, 278 S.W.3d 367, 372 (Tex. Crim.
App. 2009) (handcuffed detainee's reply to officer's request for identification that his wallet
was in front pants pocket did not constitute permission for officer to reach into pocket and
retrieve wallet and officer's belief that it did was "objectively unreasonable" under the
totality of the circumstances). 

INEFFECTIVENESS OF APPELLATE COUNSEL


 Having examined all the habeas corpus evidence in the light most favorable to the trial
court's ruling, we find no abuse of discretion by the trial court in denying Yusafi relief as to
appellate counsel, Mr. Aduddell. The record indicates that trial counsel, Mr. Becker,
affirmatively stated he had no objection to certain exhibits depicting child pornography, and
no objection to the computers from which the exhibits were extracted. The general rule is
that an affirmative acceptance at trial of previously challenged evidence forfeits any error in
its admission. See Swain v. State, 181 S.W.3d 359, 368 (Tex. Crim. App. 2006) (citing Jones
v. State, 833 S.W.2d 118, 126 (Tex. Crim. App. 1992)). This was recognized by appellate
counsel as set out in his affidavit explaining his performance to the trial court. Thus,
appellate counsel's performance could not be deficient for declining to raise an appellate
issue on the exhibits in question. See Wilson v. State, 40 S.W.3d 192, 196 (Tex. App.--Texarkana 2001, no pet.) (citing Penson v. Ohio, 488 U.S. 75, 83-84, 109 S.Ct. 346, 351-52,
102 L.Ed.2d 300, 311 (1988)) ("[A] defendant does not have the right to have a frivolous or
nonmeritorious appeal filed on his behalf."). Additionally, as the trial court made no
admissibility ruling on the warrantless seizure issue at the suppression hearing, and as
Yusafi's written consent to search was voluntarily executed, no question of admissibility
remained for appellate counsel to pursue on appeal. 

INEFFECTIVENESS OF TRIAL COUNSEL 


 Having reviewed all of the evidence in the light most favorable to the trial court's
habeas ruling, we find the trial court could have concluded that the State satisfied its burden
of proving, by clear and convincing evidence, that Yusafi's consent for the authorities to
search his two personal computers was obtained voluntarily. This amounts to a finding that
Yusafi's inadmissibility claim raised at the suppression hearing was without merit and,
therefore, his ineffective assistance complaint with regard to Mr. Becker was properly denied
by the trial court as to this issue. See Kimmelman, 477 U.S. at 375; Jackson, 973 S.W.2d at
956-57; Hollis, 219 S.W.3d at 456. Since Yusafi voluntarily consented to the search of his
two personal computers, the images depicting child pornography were admissible before the
jury at his trial. Counsel is not ineffective for failing to make objections or arguments that
have no legal basis. See Vaughn v. State, 931 S.W.2d 564, 566-67 (Tex. Crim. App. 1996);
Coleman v. State, 188 S.W.3d 708, 725 (Tex. App.--Tyler 2005, pet. ref'd); Edmond v. State,
116 S.W.3d 110, 115 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd).

 Yusafi's writ application included four other grounds for relief: 

 [1.] Counsel failed to request notice pursuant to Tex. R. Evid. 404(b), of the
State's intent to offer evidence of extraneous acts or bad acts.


 [2.] Counsel failed to object to extraneous act/bad act evidence regarding
[Yusafi's] viewing of pornography, his alleged mistreatment of his son, and
his alleged mistreatment of his ex-wife.


 [3.] Counsel failed to object to the admissibility of the computer hard drives
and images retrieved on chain of custody grounds or relevance . . . [.]


 [4.] Counsel stipulated to the identity of [Yusafi], thus relieving the State from
its burden of proof in order to obtain a conviction. 


 Failure to request Rule 404(b) notice. Yusafi has failed to prove deficient
performance by Mr. Becker on this issue as the record contains a written response to
discovery filed prior to trial by the State which included the following: 

III.


PRIOR CONVICTIONS, EXTRANEOUS OFFENSES (Whether Adjudicated or 
 Unadjudicated), and BAD ACTS OF DEFENDANT 


 During trial of the above captioned cause in the guilt/innocence phase
and the punishment phase of trial, the State intends to offer in evidence the
following prior convictions, extraneous offenses (whether adjudicated or
unadjudicated), and bad acts of Defendant herein:


 None at this time.


 State reserves the right to supplement this response to discovery.


 This evidence is consistent with Becker's affidavit to the trial court indicating he did
not make a Rule 404(b) request because the State provided the information prior to trial. The
State's discovery response and Becker's affidavit also indicate that the State had an open-file
policy which permitted Becker to inspect and review the State's files up to the day of trial. 
No deficient performance or prejudice is shown from this set of facts.

 Failure to object to extraneous offense/bad act evidence. In the memorandum that
accompanied his application for writ of habeas corpus, Yusafi directed the trial court's
attention to the following portions of testimony elicited from Yusafi's ex-wife by the State: 
 -- Applicant viewed pornography prior to the act charged in the indictment; 

 -- Applicant had an erection after reading a "dirty" novel on his computer;

 -- Applicant mistreated his son; and

 -- Applicant threatened his ex-wife. 


 Becker's affidavit regarding these four instances indicates he could not remember why
he did not lodge objections, but does not attribute his lack of objections to any trial strategy
on his part. The trial court recognizes each of these four instances of trial testimony in its
findings of fact but concludes in each one that Yusafi failed to prove that Becker's omission
was "professionally unreasonable," or that "the outcome of the trial would have been
different." The trial court's findings of fact are supported by the record. A defendant is not
entitled to error-free counsel, and that isolated instances of errors of omission or commission
do not render counsel's performance ineffective because ineffective assistance of counsel
cannot be demonstrated by isolating one portion of trial counsel's performance for
examination and out of context of the totality of the representation. See McFarland v. State,
845 S.W.2d 824, 843 (Tex. Crim. App. 1992); Ex parte Welborn, 785 S.W.2d 391, 393 (Tex.
Crim. App. 1990); Hernandez v. State, 726 S.W.2d 53, 58 (Tex. Crim. App. 1986); Modica
v. State, 151 S.W.3d 716, 730 (Tex. App.--Beaumont 2004, pet. ref'd). Applying this legal
conclusion to the trial court's finding of historical facts, we find no abuse of discretion. See
State v. Sheppard, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008) (appellate courts review de
novo trial court's application of legal principles to its properly found historical facts). 

 Failing to object to admission of hard drives and images on "chain of custody" and
"relevance" grounds. Becker's affidavit indicates he did not object on either of the grounds
at issue because such ground would not be "valid" under the circumstances of the case. He
explained that lack of chain of custody goes only to the weight of an item of evidence, not
to its admissibility. Moreover, objecting to the computer hard drives and the images
extracted therefrom on relevance grounds would have been improper as those were "the
critical issue[s] of the trial." The trial court found neither deficient performance nor
prejudice from Becker's omission of these two objections. We agree.

 The Rules of Evidence provide that identification, for admissibility purposes, is
satisfied if the evidence is sufficient to support a finding that the matter in question is what
its proponent claims. See Tex. R. Evid. 901(a); Kingsbury v. State, 14 S.W.3d 405, 407
(Tex. App.--Waco 2000, no pet.). The general rule, as alluded to above, is that, absent
evidence of tampering or other fraud, problems in the chain of custody do not affect
admissibility of evidence but, instead, affect the weight the fact-finder should give the
evidence, which may be pointed out and argued by the parties. See Druery v. State, 225
S.W.3d 491, 503-04 (Tex. Crim. App. 2007). Additionally, since the gravamen of the
offense was Yusafi's intentional or knowing possession of images of child pornography, the
images themselves and how Yusafi intentionally or knowingly possessed them (via his home
computers) were highly relevant in prosecuting Yusafi. See Tex. R. Evid. 401 (i.e., evidence
having any tendency to make the existence of any element of the charged offense more
probable or less probable than it would be without the evidence is "relevant evidence"). 
Thus, Yusafi has failed to demonstrate deficient performance in either of these instances. 

 Stipulating to Yusafi's identity. In his affidavit, Becker does not recall why the
stipulation to Yusafi's identity was executed. However, it appears that the stipulation took
place after both sides had rested but before the jury charge was read by the trial court. 
Becker also indicates that the State was apparently prepared to re-open the evidence in order
to identify Yusafi as the person named in the indictment. The trial court attributed neither
deficient performance to Becker nor prejudice to Yusafi's defense from entering into the
stipulation of identity. Although not entirely clear, it appears Yusafi contends here that
because stipulating to his identity relieved the State from having to prove identity, trial
counsel was ineffective in having Yusafi agree to it. However, a defendant's identity itself
is never suppressible as the fruit of unlawfully obtained evidence. See I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1039, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984).

 "The court shall allow testimony to be introduced at any time before the argument of
a cause is concluded, if it appears that it is necessary to a due administration of justice." Tex.
Code Crim. Proc. Ann. art. 36.02 (Vernon 2007). The Court of Criminal Appeals has
construed "due administration of justice" to require a judge to reopen the case if the evidence
would materially change the case in the proponent's favor. See Peek v. State, 106 S.W.3d
72, 79 (Tex. Crim. App. 2003). For article 36.02 purposes, relevance is not the focus; the
evidence "must actually make a difference in the case." Id. Therefore evidence sought to
be introduced pursuant to article 36.02 must not be cumulative of evidence previously
presented. See id. As proof of the identity of the accused is an essential element of the
charged offense, a request by the State to reopen the case for such a purpose, if done prior
to the conclusion of argument by counsel, would appear to meet the test set forth in Peek and
article 36.02. Thus, having Yusafi formally stipulate to his identity does not exhibit deficient
performance on Becker's part as it merely hastened the inevitable because the State was
prepared to reopen and prove identity via a witness. Again, no abuse of discretion is
demonstrated by the trial court's denial of relief on this ground. 

CONCLUSION


 Having considered all the evidence presented to the trial court for purposes of the
habeas corpus proceeding in the light most favorable to the trial court's ruling, we find no
abuse of discretion by the trial court in denying the relief requested by Yusafi on the grounds
raised. His three appellate issues are overruled. We affirm the trial court's denial of the
relief requested in Yusafi's application for writ of habeas corpus. 

 AFFIRMED. 

 

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on December 18, 2008

Opinion Delivered August 26, 2009

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. The Court in Villanueva explained that by enacting article 11.072, section 4 [stating
writ issues by operation of law when application is filed], the Texas Legislature significantly
departed from prior writ law which gave almost total discretion to the trial court when
deciding to issue or refuse a writ. Villanueva, 252 S.W.3d at 397. "Taken together, Sections
4 and 8 [regulating art. 11.072 applicant's right of appeal] signify that the rule governing
appellate review that was most recently clarified in Hargett in 1991 . . . no longer applies to
applications for a writ of habeas corpus filed by a person who is serving or who has served
a community supervision term." Id. 
2. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
3. The community supervision order also required Yusafi to serve ninety days in the
Montgomery County Jail as a condition of his community supervision.