In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-19-00182-CR**

**ELIJAH MUNOZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause No. B-180278-R**

**MEMORANDUM OPINION**

Appellant, Elijah Munoz, was originally indicted for the aggravated assault of Alice.[1] *See* Tex. Penal Code Ann. § 22.02(a)(1). The original indictment alleged that on or about February 13, 2018, Munoz "intentionally, knowingly and recklessly cause[d] serious bodily injury to [Alice] by shoving [her] into a car[.]"

---

[1] We use pseudonyms for the names of the victim and her family members. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[]").

Munoz entered a not guilty plea and waived arraignment.[2] On February 8, 2019, the State sent a notice of its intent to amend and interlineate the indictment, designating three separate manner and means of committing the aggravated assault in three paragraphs. On February 13, 2019, the trial court signed the order granting the State's motion to amend and interlineate the indictment. Paragraph one of the Amended Indictment was the same as the Original Indictment. Paragraph two alleged that on or about February 13, 2018, Munoz "intentionally, knowingly and recklessly cause[d] serious bodily injury to [Alice] by hitting [her] in the head with his hand[.]" Paragraph three alleged that on or about February 13, 2018, Munoz "intentionally, knowingly and recklessly cause[d] serious bodily injury to [Alice] by pushing [her] to the ground[.]"

On April 16, 2019, Appellant entered a plea of "guilty" to paragraph three of the Amended Indictment and elected to have the trial court determine his punishment in an open sentencing. On May 31, 2019, the trial court held a sentencing hearing. The State and Appellant each presented witnesses, and Appellant also testified on his own behalf. The trial court found Munoz guilty of aggravated assault and assessed punishment at confinement in the Texas

---

[2] Munoz's first trial attorney withdrew due to a potential conflict after Munoz entered his initial plea of not guilty. Munoz obtained a new trial attorney, and Munoz filed another not guilty plea and waiver of arraignment.

2

Department of Criminal Justice – Institutional Division for nine years. Munoz filed a notice of appeal and raises two issues on appeal. Finding no error, we affirm.

## Issues on Appeal

Munoz contends in his first issue that he had ineffective assistance of counsel because: his attorney failed to pursue a speedy trial claim, his plea of guilty was based on ineffective assistance of counsel because there was insufficient evidence of an aggravated assault, he was misled into believing he would receive deferred adjudication, his attorney failed to object to the sentence being grossly disproportionate, and the cumulative effect of all the errors of his trial attorney justifies reversal. In his second issue, Munoz claims that his nine-year sentence constituted cruel and unusual punishment and that his punishment was disproportionate, considering the fact he was a first-time offender and based on the facts.

## Summary of Underlying Facts

For about two months prior to February 13, 2018, Munoz and the victim, Alice, were in a dating relationship. Alice's adult daughter, Marsha, testified that her mother had been trying to end the relationship with Munoz for several days and Munoz "wasn't taking it very well."

On the evening in question (the day before Valentine's Day), Munoz appeared at Alice's apartment in Bridge City, looking for Alice but she was not

home. Alice lived in the apartment with Marsha, who was a college student. Marsha testified that she was at home studying when Munoz "bang[ed]" on the door. Marsha did not answer the door, but she called her mother on her cell phone and told her mother that Munoz was outside the apartment and that he appeared to have flowers and a balloon. Alice responded and told her daughter she was on her way home, and Marsha stayed in the apartment and waited for her mother to get home. Using a location-sharing feature she and Alice each had on their cell phones, Marsha saw that Alice was at the apartment complex, and Marsha assumed that her mother and Munoz were "just talking[]" so she went back to studying. After that, Marsha got "caught up in studying[]" for about an hour and then texted Alice to see where she was and if she was okay. Alice responded with a text that said, "Yes. Come downstairs. [Munoz] just attacked me."

Marsha testified that she went downstairs, she found her mother wrapped in a blanket, and the police and a neighbor were with her mother at that time. According to Marsha, her mother's face was blue, her mother had a scratch on her face, she was crying, her mother could not recollect her thoughts, and her mother was scared.[3] Marsha saw a broken vase with flowers scattered across the yard.

_____

[3] Alice had marks on her upper arm immediately after the assault, and several pictures of her injuries were introduced without objection at the punishment trial. One of the pictures that was introduced depicts the marks on her upper arm immediately after the assault, and then another picture shows the bruising as it developed on her arm over several hours. The medical records indicate she suffered

Although the police wanted her mother to get medical treatment, her mother refused to allow an ambulance to take her to the hospital because her mother "did not have insurance at the time[.]" Marsha testified that her mother continued to complain about a severe headache and said that her head hurt "really bad[,]" so Marsha decided to drive her mother to the emergency room that evening. Marsha drove her mother to a nearby stand-alone emergency room, and they had to take her mother in by wheelchair as her mother was unable to walk. Her mother was later transferred by ambulance from the stand-alone emergency clinic to St. Elizabeth Hospital in Beaumont because the examination revealed that her mother had a "brain bleed[.]"

After arriving at St. Elizabeth Hospital, Alice was then transferred by ambulance to Houston Methodist Hospital because the neurosurgeon at St. Elizabeth felt the bleed was too extensive for the neurosurgeon to perform surgery. Upon arriving in Houston, doctors advised them that her mother needed to have brain surgery. When Marsha saw her mother for the first time after surgery, "she had bandages all around her head. She was bald and she had black eyes." According to Marsha, since the surgery her mother has struggled with her recovery and even as late as March of 2019, over a year after the alleged assault, her mother suffered a grand mal seizure. Her mother has also had to take seizure medication.

---

a fracture of her frontal bone near her sagittal sinus, and a brain bleed or epidural hematoma.

A warrant was issued for the arrest of Munoz, who turned himself in, and he provided his oral statement and affidavit to the police.[4] According to Munoz's affidavit, he grabbed Alice and she lost her balance and fell backwards hitting her head on the concrete, but he denied hitting her or using any force against her. At the punishment trial, Munoz testified that he was taking "responsibility," but it happened in the "spurt [sic] of the moment," that he "pushed" her, and she fell and hit her head on the concrete, and he picked her up. Munoz admitted he was upset with Alice that night because she had gone drinking with her friend, and she had turned off the location on her phone so he could not track her location. When Alice arrived and they began talking in the parking lot, he also thought her lipstick was removed and her clothes were "messed up." He agreed that after he pushed her down and she hit her head, she immediately began complaining of pain and that she said she was feeling sick. He stated that he did not stay around after that because she went to the neighbor, and he was nervous and shocked at his behavior.

Munoz also called two other witnesses at his punishment trial. His father, Gabriel Munoz, testified Elijah had a normal upbringing, played sports, graduated from high school in Corpus Christi, and that Elijah had never been convicted of a felony and had never been arrested. Gabriel Munoz testified Elijah regretted what

---

[4] At the beginning of the sentencing hearing, the trial court took judicial notice of the court's file, which included the presentence report. Munoz's statement and affidavit were part of the presentence report.

happened but "[i]t was something that happened in the heat of the moment . . . completely out of character for Elijah." Gabriel Munoz believed that Elijah would be a good candidate for probation, and that he would follow the rules. According to Gabriel, all of Gabriel's children, including Elijah, attended the Texas Bible Institute, and Elijah was taking responsibility for what happened.

Marcherita Gray-Pritchett also testified as a defense witness. Pritchett stated that she is Elijah's fiancé and, other than a three month separation, they had been together over two years. She described their relationship as a loving, caring relationship, and she stated that Munoz's actions were inconsistent with the Elijah she has known because he is not violent, never raises his voice, and she has never seen him angry. Gray-Pritchett testified she believes Elijah is remorseful, and Gray-Pritchett testified she believes he would be a good candidate for probation if the trial judge would allow it.

Plea Hearing

On April 16, 2019, Munoz and his attorney appeared before the trial court, and his trial attorney stated in open court that Munoz had been served with a copy of the Amended and Interlineated Indictment more than two full days "prior to today[,]" and he notified the trial court that Munoz would be pleading guilty to paragraph three of the Amended Indictment. At the plea hearing, the trial court orally admonished Munoz. Munoz orally waived his right to a jury trial; he pled guilty to

7

paragraph three; he stated that he did so freely without threat or promise and that he understood the paperwork he signed; he stated that he understood he was giving up constitutional rights including the right during the guilt innocence phase to have the witnesses appear in person, to be confronted by witnesses, and to cross-examine witnesses; he agreed that he understood the range of punishment if convicted of paragraph three; and he was aware there was no plea bargain agreement, he was making an open plea with punishment to be decided by the trial court, and he understood any offers by the State would "disappear[.]" Munoz was admonished on reporting to probation for a presentence report, and a punishment trial was set for May 31, 2019.

The following exchange occurred at the plea hearing:

THE COURT: Okay. So, even though I'm not reading it to you, Mr. Munoz, you understand this Amended and Interlineated Indictment has three paragraphs charging three different ways that the offense of aggravated assault could be committed.

[APPELLANT]: Yes, sir.

THE COURT: And the plea papers that have been presented to me indicate that you're entering a plea as to Paragraph Three of the indictment.

[APPELLANT]: Yes, sir.
THE COURT: Not One or Two.

[APPELLANT]: Yes, sir.

THE COURT: Okay. It's Three only. You understand?

8

[APPELLANT]: Yes, sir.

THE COURT: And, so, let me ask before I ask for that plea, you understand you're entitled to a jury trial?

[APPELLANT]: Yes, sir.

THE COURT: You understand generally what a jury trial is?

[APPELLANT]: Yes.

THE COURT: And you signed a piece of paper saying you do not want a jury trial; is that correct?

[APPELLANT]: Correct. Yes, sir.

THE COURT: And, so, as to Paragraph Three of the Amended and Interlineated Indictment, how do you plea? Guilty or not guilty?

[DEFENSE ATTORNEY]: Guilty.

[APPELLANT]: Guilty.

THE COURT: Okay. Are you pleading guilty, Mr. Munoz, of your own free will?

[APPELLANT]: (No response.)

[DEFENSE ATTORNEY]: Are you doing this freely? Nobody is forcing you to do this?

[APPELLANT]: Right. Yes, sir.

THE COURT: Okay. And that was going to be the next question. Did anybody threaten you to make you plead guilty?

[APPELLANT]: No, sir.

THE COURT: Did anybody promise anything to make you plead guilty?

[APPELLANT]: No, sir.

THE COURT: And are you pleading guilty because you are guilty of the offense alleged in Paragraph Three?

[APPELLANT]: Yes, sir.

Munoz also signed a sworn document styled "Defendant's Stipulations, Waivers and Judicial Confession" wherein he confessed that he understood the Plea Admonishments, was "aware of the consequences of [his guilty] plea[,]" was "confess[ing] to committing the offense of Aggravated Assault, exactly as charged in the indictment," confessed that he was guilty and that he was competent, and stated his plea was freely, voluntarily, and intelligently made. State's Exhibits 1 and 2 were admitted without objection at the plea hearing. Exhibit 1 contains the style of the case and the Plea Admonishments and notified Munoz that he was charged with aggravated assault, a second-degree felony that had a punishment range of "not more than 20 years or less than 2 years in TDCJ[.]" The punishment section was marked with a typed "X" and marked with a hand-marked asterisk. The paragraph about deferred adjudication was also marked with a typed "X" and marked with a hand-marked star. The second page of State's Exhibit 1 contains "Defendant's Stipulations, Waivers and Judicial Confession" and it is signed by Munoz. State's Exhibit 2 is styled "Punishment Recommendations" and there is an "X" next to the statement "There is no agreed punishment recommendation." There is also an "X" next to a statement that the "Prosecution should proceed only on Paragraph 3[.]"

10

Munoz's appellate attorney filed a notice of appeal on June 17, 2019. Munoz's appellate attorney also filed a motion for new trial with the trial court on June 24, 2019, arguing the "verdict in this cause is contrary to the law and the evidence[,]" and that the trial court had "discretion" to grant a new trial to protect against oppressive verdicts. No other specific grounds were mentioned in the motion for new trial. The trial court did not rule on the motion for new trial, and it was overruled by operation of law.

Ineffective Assistance of Counsel

Munoz contends in his first issue that he had ineffective assistance of counsel. With respect to an ineffective assistance claim, our review of counsel's performance is highly deferential, and we make a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance.[5] To overcome that presumption, Appellant must satisfy the two prongs established by *Strickland v. Washington* by demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.[6] "Unless [an] appellant can prove both prongs, an appellate court must

---

[5] *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

[6] *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *see also Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (adopting and applying the *Strickland* test).

not find counsel's representation to be ineffective."[7] The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption.[8] "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined."[9]

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel."[10] Allegations of ineffectiveness must be shown in the record, and the record must affirmatively establish the alleged ineffectiveness.[11] Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial regarding trial counsel's alleged errors to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards.[12]

---

[7] *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687).

[8] *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) (en banc) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal.").

[9] *Lopez*, 343 S.W.3d at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

[10] *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)).

[11] *See id.*

[12] *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

"To show prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[13]

A defendant is entitled under the Sixth Amendment to effective assistance of counsel in guilty-plea proceedings.[14] A guilty plea may be considered involuntary due to ineffective assistance of counsel.[15] "Competent counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case."[16] A defendant must demonstrate that but for the erroneous advice of counsel, he would not have pled guilty and would have insisted on going to trial.[17]

---

[13] *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (quoting *Strickland*, 466 U.S. at 694).

[14] *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).

[15] *Ex parte Moussazadeh*, 361 S.W.3d 684, 688-89 (Tex. Crim. App. 2012) (counsel's advice regarding parole eligibility was deficient); *Harrington*, 310 S.W.3d at 458-59.

[16] *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009) (citation omitted).

[17] *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (holding that the two-part *Strickland* test applies to guilty pleas); *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999) (citations omitted).

Before accepting a guilty plea, a trial court is required to admonish a defendant of the applicable range of punishment of the crime.[18] "No plea of guilty . . . shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary."[19] In admonishing the defendant, "substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court."[20] The trial court may make the admonishments orally or in writing.[21] In this case, the trial court did both.

a. Failure to pursue a speedy trial claim

Munoz argues his trial attorney was ineffective because he failed to pursue a speedy trial claim. The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial. U.S. Const. amend. VI. The mere failure of counsel to file appropriate pretrial motions is not categorically deemed ineffective assistance.[22]

The record before us in this case is silent regarding trial counsel's reasons for not filing a speedy trial motion. There is no indication in the record that the

---

[18] Tex. Code of Crim. Proc. Ann. art. 26.13(a)(1).
[19] *Id*. art. 26.13(b).
[20] *Id*. art. 26.13(c).
[21] *Id*. art. 26.13(d).
[22] *See Jaile v. State*, 836 S.W.2d 680, 687 (Tex. App.—El Paso 1992, no pet.); *Martinez v. State*, 824 S.W.2d 688, 690 (Tex. App.—El Paso 1992, pet. ref'd).

14

Appellant's trial counsel sought to delay the trial setting, or that the State attempted to postpone the trial. It is possible trial counsel may have wanted or needed the time he was given to prepare for trial.[23] We must presume counsel had a valid strategic reason for defending the case as he did and conclude that, with respect to the speedy trial issue, on the record before us that Munoz has not overcome the presumption that counsel's representation was reasonable and professional.[24]

Further, unless an appellant shows a pretrial motion had merit and that a ruling on the motion would have changed the outcome of the case, counsel will not be ineffective for failing to assert the motion.[25] We "cannot presume the nature of an attorney's advice from the record of his conduct at trial without evidence to show that the trial strategy originated with the attorney and was not the result of acquiescence to the client's wishes."[26] Here, Munoz has failed to establish that the trial strategy originated with the attorney and was not the result of acquiescence to the wishes of Munoz.

---

[23] *See Walker v. State*, 201 S.W.3d 841, 850 (Tex. App.—Waco 2006, pet. ref'd) (noting possible reason for not asserting speedy trial for counsel to have time to investigate and prepare for trial).

[24] *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Crocker v. State*, 441 S.W.3d 306, 313-314 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Jaile*, 836 S.W.2d at 686 (same).

[25] *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (citing *Roberson v. State*, 852 S.W.2d 508, 510-12 (Tex. Crim. App. 1993)).

[26] *Shepherd v. State*, 673 S.W.2d 263, 267 (Tex. App.—Houston [1st Dist.] 1984, no pet.).

Munoz must also show the speedy trial motion had merit. We analyze the merits of a federal constitutional speedy trial claim "on an ad hoc basis" by weighing and then balancing four factors: (1) length of delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused.[27] A speedy trial protects the defendant's interest in freedom from oppressive pretrial incarceration, mitigation of the anxiety and concern accompanying public accusation, and avoidance of impairment to the accused's defense.[28] Article I, section 10 of the Texas Constitution also guarantees the accused in all criminal prosecutions the right to a speedy and public trial.[29] We also analyze claims of a denial of the state speedy-trial right under the same four *Barker* factors.[30]

"No single factor is necessary or sufficient to establish a violation of the right to a speedy trial."[31] The first factor in assessing a speedy trial claim, the length of delay, acts as a "triggering mechanism" for analysis of the other *Barker* factors.[32] "Unless the delay is presumptively prejudicial," courts need not examine the other three factors.[33]

---

[27] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).
[28] *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999).
[29] Tex. Const. art. I, § 10.
[30] *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).
[31] *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).
[32] *Barker*, 407 U.S. at 530.
[33] *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

The defendant must first make a showing that "'the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay.'"[34] "Presumptive prejudice" marks the point in which courts deem the delay unreasonable enough to trigger further inquiry.[35] The length of the delay is measured from the time the defendant was arrested or formally accused.[36] In *Barker*, the Supreme Court described the delay factor as follows:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. [footnote omitted] To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.[37]

Generally, when the delay approaches one year, it is sufficient to trigger a speedy trial inquiry.[38]

---

[34] *Gonzalez v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)).

[35] *See id.* (citing *Munoz*, 991 S.W.2d at 821-22).

[36] *State v. Thomas*, 453 S.W.3d 1, 4 (Tex. App.—Dallas 2014, no pet.) (citing *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003)).

[37] 407 U.S. at 530-31.

[38] *See Doggett*, 505 U.S. at 652 n.1; *Harris*, 827 S.W.2d at 956 ("delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis").

17

In this case, Appellant was originally indicted on May 30, 2018. On May 31, 2018, the State announced that it was ready for trial. On June 12, 2018, Appellant's first attorney filed a "Waiver of Arraignment" on behalf of Appellant. On July 20, 2018, the first attorney filed a Motion to Withdraw as Counsel citing a conflict of interest. In the Motion to Withdraw it stated that the Defendant's announcement was set for September 11, 2018. The motion to withdraw was agreed to and approved by Appellant. On July 26, 2018, Appellant's second trial attorney filed a "Waiver of Arraignment" on behalf of Appellant. The second trial attorney made a trial announcement on December 12, 2018, and the trial court indicated the case was specially set for February 11, 2019. On February 8, 2019, the State provided the defendant with notice of its intention to interlineate and amend the indictment. The docket sheet indicates there was a "Notice of Setting" on February 11, 2019, and another one on February 12, 2019. The State's motion to interlineate and amend the indictment was file stamped by the clerk of court and the motion was granted by the trial court on February 13, 2019, and the indictment was then amended and entered into the record on February 27, 2019.

Applying an "an ad hoc" analysis to these facts we weigh and then balance the four *Barker* factors.[39] "While the State has the burden of justifying the length of

---

[39] *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Munoz*, 991 S.W.2d at 821).

delay, the defendant has the burden of proving the assertion of the right and showing prejudice."[40]

As to the length of the delay, the first factor, Appellant's open plea was made in court on April 16, 2019, approximately eleven months after he was indicted. We conclude that the eleven month delay exceeds the threshold of a presumptively prejudicial delay and in this case would trigger further analysis.[41] Therefore, we examine the remaining three *Barker* factors.

The second factor examines the reason for the delay. In this case, some of the delay was due, in part, to the withdrawal of Munoz's original trial counsel. Munoz agreed to the withdrawal and that delay cannot be attributed to the State. The second trial attorney waived a reading of the indictment and entered a not guilty plea on July 26, 2018, then he appeared and made an announcement in December of 2018, and the case was set for trial on February 11, 2019. Although the State provided notice to the defendant of its intention to amend the indictment a few days before the February trial setting, nothing in the record suggests that the amendment was done to delay the proceedings or to prejudice Appellant. The record before us is also silent as to why the case did not go to trial on February 11, 2019, and we cannot speculate

---

[40] *Cantu*, 253 S.W.3d at 280 (citing *Barker*, 407 U.S. at 531; *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

[41] *See Doggett*, 505 U.S. at 652 n.1; *Harris*, 827 S.W.2d at 956 ("delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis").

regarding the reason the case was delayed further, or as to the strategy of Munoz's trial attorney. That said, given the burden initially rests on the State to establish the reasons for delay, we think this factor weighs slightly in favor of the defendant.

The third factor examines the defendant's assertion of the right. Here, our record fails to show Munoz desired a speedy trial or that he ever communicated his desire to his trial counsel. This factor weighs in favor of the State.

Finally, the fourth factor requires that we consider the "interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired."[42] Munoz does not point to any evidence in the record that he was subjected to an oppressive pretrial incarceration, or that there was any admissible defensive evidence that was lost due to the delay. Rather, he argues that he was prejudiced because if his counsel had filed a motion for speedy trial before the indictment was amended then the State would have proceeded on the original indictment which alleged Munoz shoved Alice into a car, and he contends that the evidence was insufficient to prove that Munoz pushed her into a car and therefore he would have been found "not guilty." Munoz's theory assumes that the State could not have otherwise sought to amend the indictment and that the State could not have proven Munoz shoved Alice into a car. We note that

---

[42] *Cantu*, 253 S.W.3d at 285.

even if defense counsel had filed a motion for speedy trial after making an announcement in December of 2018, the State still may have amended the indictment prior to the February 2019 trial setting.[43]

Balancing the four *Barker* factors, even if a speedy trial claim had been asserted in the trial court, the trial court would have been correct in denying the motion because Munoz's right to a speedy trial was not violated. While the delay may have been presumptively unreasonable, and even if the State is at fault for part of the delay, Munoz agreed to part of the delay, failed to assert his right to a speedy trial, and failed to establish a prima facie case of prejudice. Under these circumstances, we conclude that the trial court would have been justified in denying a speedy trial motion.[44]

Neither trial counsel nor the State has been given an opportunity to respond to Appellant's speedy trial allegations. Appellant has failed to establish that a speedy trial motion would have had merit, or that it would have changed the outcome of the case. On the record now before us, we cannot conclude there was a deficient

---

[43] *See generally* Tex. Code of Crim. Proc. Ann. art. 28.10 ("[a]fter notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences.").

[44] *See Ervin v. State*, 125 S.W.3d 542, 549 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

performance or that there was a reasonable probability that the result of the proceeding would have been different if a speedy trial motion had been asserted.

b. Failure of counsel to advise Munoz that there was insufficient evidence of an aggravated assault made his plea involuntary

Next, Munoz argues that he received "bad advice" from his counsel to plead guilty when the evidence was insufficient to convict Munoz. The Texas Penal Code provides that a person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another.[45] The offense of aggravated assault is established if a person commits an assault and causes serious bodily injury to another.[46] "Serious bodily injury" is defined by the Texas Penal Code as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."[47]

Aggravated assault causing serious bodily injury is a "result of conduct" offense.[48] "The gravamen of the offense of aggravated assault is the specific type of assault defined in Section 22.01. Thus, the *actus reus* for 'bodily injury aggravated assault is 'causing bodily injury.'"[49] To prove the offense of aggravated assault, the

---

[45] Tex. Penal Code Ann. § 22.01(a)(1).
[46] *Id.* § 22.02(a)(1).
[47] *Id.* § 1.07(a)(46).
[48] *Landrian v. State*, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008).
[49] *Id.*

22

State must prove that a defendant intentionally, knowingly, or recklessly engaged in the prohibited conduct and that the defendant caused bodily injury to another.[50] The Penal Code provides that:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.[51]

The record in this case established that Appellant either intentionally or recklessly pushed and grabbed the victim, and that he caused her to fall and hit her head with sufficient force to cause a fracture to her sagittal sinus bone and serious brain injury. Munoz admitted that he pushed Alice causing her to hit her head, and that it caused injury to Alice and that he caused her to "almost lose her life." Munoz argues on appeal that there was insufficient evidence of bodily injury, and he suggests that his trial attorney should have advised him he could possibly argue that the victim was already suffering from a brain bleed before he pushed her and caused her fractured sinus and brain injury, or perhaps the injury to her brain was caused by something that occurred at the hospital. But the record before us is completely void of anything that would support such allegations. The evidence is more than sufficient to support

---

[50] *See id.*

[51] Tex. Penal Code Ann. § 6.03(c).

Appellant's guilty plea, as required by Article 1.15 of the Code of Criminal Procedure.[52] Munoz has not overcome the presumption that counsel's representation was reasonable and professional.[53]

c. Misled into thinking he would receive deferred adjudication making his plea involuntary

Munoz also argues that his trial attorney somehow misled him into thinking he would receive deferred adjudication and therefore his plea was involuntary. Munoz relies upon the fact that the plea admonishments had certain language underlined and had an asterisk next to the section that mentioned the possibility of deferred adjudication. We note, however, that the written admonishments also had a star next to the portion setting the range of punishment, with the words "two years" and "twenty years" also hand-underlined. And the trial court orally admonished Munoz and notified him about the range of punishment and Munoz admitted he entered his plea freely and voluntarily and he was aware the range of punishment. He also admitted he had not relied on any promises or representations about the outcome of a possible sentence. Munoz has failed to point to any evidence in the record that he was misled, or that he did not want to plead guilty, nor has he

---

[52] *See* Tex. Code Crim. Proc. Ann. art. 1.15.
[53] *See Bone*, 77 S.W.3d at 833.

24

demonstrated to this Court that he received ineffective assistance of counsel, or that but for counsel's alleged ineffectiveness he would not have pled guilty.

Munoz must demonstrate that but for the erroneous advice of counsel, he would not have pled guilty and would have insisted on going to trial.[54] Munoz has failed to demonstrate to this Court that he received ineffective assistance of counsel when he entered his guilty plea. The record reflects that the trial court admonished Munoz and that he admitted he entered his plea freely and voluntarily. In addition, Munoz has not directed us to any evidence in the record to show that he did not want to plead guilty. He has not shown this court that but for counsel's alleged ineffectiveness, he would not have pled guilty, and there is nothing in the record before us to establish Appellant was misled by his trial counsel.[55]

d. Failure to object to the sentence being grossly disproportionate

Appellant also asserts that his trial counsel rendered ineffective assistance by failing to object to the sentence imposed by the trial court as grossly disproportionate. To prevail on such a claim, Appellant would have to show that if his trial counsel had objected to the sentence, the trial court would have committed

---

[54] *See Hill*, 474 U.S. at 58-59 (holding that the two-part *Strickland* test applies to guilty pleas); *Moody*, 991 S.W.2d at 857-58 (citations omitted).

[55] *See Guidry v. State*, 177 S.W.3d 90, 94 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Powers v. State*, 727 S.W.2d 313, 316 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (a record devoid of any evidence that appellant was misled by his trial counsel provides no basis upon which an appellate court may act).

reversible error in overruling the objection.[56] We have already concluded the sentence was within the statutory range, and we cannot say the trial court would have erred in overruling the objection.

e. Cumulative effect of all the errors of his trial attorney justifies reversal

Munoz argues the cumulative effect of the alleged errors justifies a reversal. We disagree. Munoz has failed to meet his burden to establish on the record before us that he received ineffective assistance of counsel when he entered his guilty plea, or during the punishment phase of his trial. Having already determined that no error exists as to his alleged ineffective assistance claims, there cannot be any cumulative error.[57] Furthermore, he has failed to show prejudice, or a reasonable probability that but for counsel's alleged deficient performance the outcome of the proceeding would have been different.[58] We overrule his first issue.

## Excessive Punishment

In his second issue, Munoz argues he should be granted a new punishment hearing because his sentence of nine years for aggravated assault constitutes cruel and unusual punishment under the Eighth Amendment of the United States

---

[56] *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996); *Jacoby v. State*, 227 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

[57] *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."); *Modica v. State*, 151 S.W.3d 716, 727 (Tex. App.—Beaumont 2004, pet. ref'd).

[58] *See Jackson*, 877 S.W.2d at 771 (citing *Strickland*, 466 U.S. at 694).

Constitution and Article I, Section 13 of the Texas Constitution, because his sentence is grossly disproportionate to the offense committed.[59]

During closing, the defense attorney argued that the trial court should grant deferred adjudication because it had the discretion to do so, if deferred were granted then Munoz could pay the restitution and the medical bills, and Munoz had no prior convictions and has taken responsibility for his actions. The State argued Munoz should receive a term of incarceration and emphasized Munoz's testimony during the punishment phase which showed a lack of true remorse, revictimization and blaming the victim for the problems they had in the relationship, as well as the evidence and the severity of the injuries Munoz inflicted on the victim.

In reviewing a trial court's sentencing determination, we afford the trial court "a great deal of discretion[.]"[60] The Eighth Amendment to the United States Constitution provides that "[e]xcesssive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[61] Generally, a sentence that is within the range of punishment established by the Legislature is not excessive, cruel, or unusual, and will not be disturbed on appeal.[62] An appellate court rarely

---

[59] *See* U.S. Const. Amend. VIII; Tex. Const. art. I, § 13.

[60] *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984).

[61] U.S. Const. amend. VIII.

[62] *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *Gerhardt v. State*, 935 S.W.2d 192, 196 (Tex. App.—Beaumont 1996, no pet.) (citing *Jackson*, 680 S.W.2d at 814).

considers a punishment within the statutory range for the offense excessive, unconstitutionally cruel, or unusual under either Texas law or the United States Constitution.[63] An exception to this general rule is recognized when the sentence is grossly disproportionate to the offense.[64] Except for cases involving capital punishment, a successful challenge to the proportionality of a particular sentence is exceedingly rare.[65]

To determine whether a sentence is grossly disproportionate to a particular defendant's crime, we consider (1) the severity of the offense in light of the harm caused or threatened to the victim; (2) the culpability of the defendant; and (3) the defendant's prior adjudicated and unadjudicated offenses.[66] In the rare case in which this threshold comparison leads to an inference of gross disproportionality, we then compare the defendant's sentence with the sentences of other offenders in Texas and with the sentences imposed for the same crime in other jurisdictions.[67] "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual."[68]

---

[63] *See Kirk v. State*, 949 S.W.2d 769, 772 (Tex. App.—Dallas 1997, pet. ref'd); *see also Jackson v. State*, 989 S.W.2d 842, 846 (Tex. App.—Texarkana 1999, no pet.).

[64] *Solem v. Helm*, 463 U.S. 277, 289-90 (1983); *see also Harmelin v. Michigan*, 501 U.S. 957, 1004-05 (1991) (Kennedy, J., concurring).

[65] *Solem*, 463 U.S. at 289-90.

[66] *Simpson*, 488 S.W.3d at 323.

[67] *Id.*

[68] *Id.*

To preserve error for appellate review, the complaining party must present a timely and specific objection to the trial court and obtain a ruling.[69] A criminal defendant's failure to object with specificity to the alleged excessiveness of his sentence at the time of sentencing or in a post-trial motion waives any error for the purpose of appellate review.[70] The record reflects that Munoz did not object when the trial court pronounced his sentence. Further, although Munoz's appellate attorney filed a motion for new trial with the trial court after Munoz had appealed, the motion for new trial failed to specifically complain of the alleged excessiveness of his sentence, nor did he argue it was cruel and unusual punishment.[71] Therefore, Munoz waived his complaint regarding the alleged excessive sentence.[72]

That said, even if Munoz had preserved this complaint for appellate review, we conclude that Munoz's sentence of nine years of confinement is not

---

[69] Tex. R. App. P. 33.1(a).

[70] *See Means v. State*, 347 S.W.3d 873, 874 (Tex. App.—Fort Worth 2011, no pet.); *Trevino v. State*, 174 S.W.3d 925, 927-28 (Tex. App.—Corpus Christi 2005, pet. ref'd).

[71] In his motion for new trial, he stated the trial court had discretion to grant a new trial to protect against oppressive verdicts rendered by a jury, but he did not allege his sentence was cruel and unusual punishment. A general objection in a motion for new trial, without language that the sentence was cruel and unusual, will not preserve defendant's claim that his punishment is cruel and unusual. *See* Tex. R. App. P. 33.1; *Romero v. State*, Nos. 07-18-00009-CR & 07-18-00063-CR, 2019 Tex. App. LEXIS 2157, at *3 (Tex. App.—Amarillo Mar. 19, 2019, no pet.) (mem. op., not designated for publication).

[72] *See id*.

unconstitutionally excessive, cruel and unusual, nor is it grossly disproportionate to the offense. Munoz pled guilty to aggravated assault, a second-degree felony.[73] The statute provides the punishment range for his offense is two to twenty years.[74] The punishment Munoz received, nine years, clearly falls within the range of the statute.[75]

According to Munoz, he had no prior convictions and therefore "no propensities for committing crimes[,]" the "incident involved a tussle in which the harm was allegedly caused by one push[,]" the "event" was his "first and only violent encounter," and "the act in itself was not remarkable enough to justify the sentence." Munoz argues that there is no evidence he continued to strike Alice after she fell, and he helped her up. Munoz asserts he has been "a productive member of society with family support, good character, attended Bible college and never before had any arrests." Munoz also argues that Alice "participated in the tussle."

The victim of his aggravated assault suffered a serious injury and required extensive surgery, and according to the record, she continues to have residual physical and emotional problems from the assault. On the record before us, we cannot say that the trial court abused its discretion in assessing a nine-year sentence,

---

[73] *See* Tex. Penal Code Ann. § 22.02(a)(1), (b).
[74] *See id.* § 12.33.
[75] *See id.*

nor can we say the sentence received was grossly disproportionate to the offense Munoz committed. Appellant's sentence falls well within the statutory range, and there is no reason to compare his sentence to sentences imposed on others.[76] We overrule his second issue.

Having overruled both of his issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 5, 2021
Opinion Delivered June 9, 2021
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

[76] *Simpson*, 488 S.W.3d at 323; *see also Garcia-Martinez v. State*, No. 09-17-00395-CR, 2019 Tex. App. LEXIS 3481, at *10 (Tex. App.—Beaumont May 1, 2019, no pet.) (mem. op., not designated for publication).